## A00A1729. JONES v. THE STATE.
(539 SE2d 602)

SMITH, Presiding Judge.

Carlton Jones was charged with three counts of armed robbery and two counts of possession of a firearm by a convicted felon. The State dead-docketed the firearms charges. A jury found Jones guilty of two counts of armed robbery and acquitted him of the third charge. Jones's motion for new trial was denied, and he appeals, alleging error in the trial court's ruling that he failed to establish a prima facie case of discrimination in selecting the jury under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986); in the State's failure to prove venue; and in the trial court's jury instruction. Finding no error, we affirm.

1. *Batson* sets forth a three-step process for evaluating such challenges. First, the defendant must make a prima facie showing that the prosecutor has exercised the State's peremptory challenges improperly on the basis of race. Second, if such a showing is made, the burden shifts to the State to provide racially neutral explanations for the strikes challenged. Only then does the trial court determine whether the defendant "has established purposeful discrimination." Id. at 97-98.

In this case, the trial court determined that no prima facie case had been shown by Jones. Jones argues that this ruling is erroneous because the State used "a statistically significant proportion of [its] strikes to exclude African-American males from the jury." In support, he points to the fact that four African-American men were in the 36-person venire, or 11.1 percent. The State used two of its six strikes, or 33.3 percent, on two of the four African-American men from the panel. Jones points to the 22.2 percent differential between the two figures as establishing a prima facie case. He states that this differential is substantially larger than the 15 percent differential found insufficient to prove a prima facie case in *Horton v. State*, 234 Ga. App. 478, 481 (1) (507 SE2d 221) (1998). But a prima facie case of purposeful discrimination is made by showing that

> the totality of the relevant facts gives rise to an inference of discriminatory purpose. Even though circumstantial evidence of invidious intent may include proof of disproportionate impact, numbers alone may not establish a disproportionate exercise of strikes sufficient to raise a prima facie inference that the strikes were exercised with discriminatory intent.

(Citations and punctuation omitted.) *Livingston v. State*, 271 Ga. 714, 718 (524 SE2d 222) (1999). Here, as in *Livingston*, the jury con-

tained a larger proportion of African-Americans than did the venire. Id.

Also, the issue of whether Jones presented a prima facie case of discriminatory intent is moot because the State presented its reasons for the challenged strikes before the trial court ruled that Jones had not made a prima facie case. Here, as in *Livingston*, the State offered race-neutral reasons for its challenged strikes.

One juror was struck because one of the prosecutors had participated in the prosecution of a murder case in which the victim was the juror's brother. This juror also had an uncle who was prosecuted for attempted murder. Both of these facts present race-neutral reasons for striking the juror. *Cooper v. State*, 220 Ga. App. 531, 532 (469 SE2d 790) (1996) (juror's "prior involvement with the criminal justice system, whether positive or negative, could affect" impartiality); *Jenkins v. State*, 269 Ga. 282, 290 (11) (498 SE2d 502) (1998) (criminal history of family member sufficiently race-neutral reason). A second juror was struck because he appeared angry and was unresponsive to the State's questioning. These factors have also been held to constitute race-neutral reasons for striking a juror. See *Jones v. State*, 226 Ga. App. 428, 429-430 (1) (487 SE2d 62) (1997) (apparent hostility or inattentiveness sufficiently race-neutral).

We cannot agree with Jones that the trial court did not go on to the third step and make a determination as to whether Jones had carried his burden of showing purposeful discrimination. The trial court found that "the State has adequately articulated reasons that are race neutral for striking those two jurors." This statement was, in fact, just such a determination. The trial court did not err.

2. Jones contends that although the State showed the crime took place within the city of Atlanta, this was insufficient proof of venue in Fulton County. We do not agree.

Because it is presumed that the officer acted within his territorial jurisdiction, Jones concedes that the State showed that the crimes occurred in the city of Atlanta. *Joiner v. State*, 231 Ga. App. 61 (497 SE2d 642) (1998). He argues, however, that this did not suffice because not all of Atlanta is in Fulton County, neither victim testified that the armed robbery occurred in Fulton County, and the officer's testimony to that effect was "hearsay."

The investigating officer, employed by the Atlanta Police Department, testified that he responded to the initial call, that he interviewed both victims at the scene, and that they described the armed robbery at that location. The officer testified this occurred in Fulton County. Contrary to Jones's argument, although the officer did not witness the crime, his testimony was not hearsay. The victims testified that the crime took place at a certain location. The officer simply testified that the location identified by the victims is in Fulton

County. This established venue by direct testimony.

3. Jones maintains the trial court's jury charge erroneously usurped the jurors' right to determine for themselves the credibility of witnesses, violating his due process rights under the United States and Georgia Constitutions and OCGA § 24-9-25. The charge at issue instructed the jury:

> If you find that a witness has been successfully impeached by proof of previous contradictory statements, you may disregard that testimony unless it is corroborated by other credible testimony and the credit to be given to the balance of the testimony of the witness would be for you, the jury, to determine.

The problem Jones alludes to was highlighted in *James v. State*, 180 Ga. App. 7 (348 SE2d 502) (1986). The jury alone has the right to determine for itself the credibility of any witness, even if it finds the witness has been "successfully impeached." Id. at 9-10 (4). Even when isolated, however, the instruction here is not error because, unlike *James*, the judge did not instruct the jury that it *must* disregard the testimony of any witness. The word "may" is permissive, rather than mandatory. See *In the Interest of K. M. L.*, 237 Ga. App. 662, 663-664 (2) (516 SE2d 363) (1999).

In addition, the charge "must be read in conjunction with the entire jury instruction and provides no cause for reversal if the court's instruction in its entirety makes it plain that the jury is the sole judge of witness credibility. Such was the case here." *Berry v. State*, 267 Ga. 476, 480 (4) (c) (480 SE2d 32) (1997). Here, the court's charge repeatedly stated clearly that matters of the credibility of witnesses were to be decided by the jury alone. When the charge is considered as a whole, we find no error requiring reversal. *James*, supra.

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 22, 2000 —
RECONSIDERATION DENIED NOVEMBER 1, 2000 —

*Steven E. Phillips*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Anna E. Green, Assistant District Attorneys*, for appellee.