A04A1807. BRAVO v. THE STATE.
(603 SE2d 669)

BLACKBURN, Presiding Judge.

Following a jury trial and the denial of his motion for new trial, Marco Bravo appeals his convictions for rape,[1] false imprisonment,[2] and possession of a firearm during the commission of a felony.[3] He enumerates three errors: (a) the trial court erroneously found he received effective assistance of counsel; (b) the State failed to prove venue; and (c) the trial court failed to respond adequately to a jury question. We hold that evidence supported the trial court's findings regarding effective assistance, that competent evidence proved venue, and that Bravo agreed to the trial court's response to the jury question. Accordingly, we affirm.

Construed in favor of the verdict, the evidence shows that early one morning, Bravo picked up a 17-year-old female, whom he knew from previous trips he had given her to see her probation officer, from her home to go get some gas for his vehicle and to discuss her poor school grades with her. After obtaining gas, he drove in a direction away from her home. When she protested, he pulled out a gun and placed it to her head, informing her that she would go wherever he

---

[1] OCGA § 16-6-1 (a).
[2] OCGA § 16-5-41 (a).
[3] OCGA § 16-11-106 (b).

wanted her to go. When she tried to flag a passing police car, he threatened to shoot her. He drove up the freeway to an exit, where he pulled the car over and stopped. Still threatening her with the gun, he squeezed her neck hard, ripped off her blouse, and pulled down her bra, groping her despite her efforts to resist. As he was pulling off her pants and underwear, she bit him on the face, in response to which he struck her head with the gun. He twice forced sexual intercourse on her.

Remorseful after the event, he gave her the gun and told her she should shoot him for his actions. She demanded to be taken home, where she immediately informed relatives and then police of the incident. She exhibited cuts, abrasions, and contusions on her head and neck, marks on her chin, a hematoma above her left ear, and scratches on her hands. DNA tests revealed the presence of Bravo's semen in her body.

Bravo was soon arrested and told police that he and the victim had engaged in consensual sex. He admitted that they had not previously had sex, that during the encounter she twice tried to stop him from proceeding with sex, that he ripped her clothes off, showed her a gun, struck her head, and was struck by her during the encounter, and that after the experience, he gave her a "plastic toy gun" and told her that she could shoot him if he had done anything wrong. Charged with rape, false imprisonment, and possession of a firearm during the commission of a felony, Bravo testified at trial, claiming now that he and the victim had had a lengthy sexual relationship prior to the date in question and that he used no gun (plastic or otherwise) or any kind of force to engage in the consensual intercourse with her; indeed, he claimed she aggressively sought sex with him. The jury found him guilty on all counts.

Bravo moved for a new trial, claiming, among other things, that he had received ineffective assistance of counsel and that venue was not proven. Following an evidentiary hearing, the trial court found against Bravo on all contentions and denied the motion.

1. Bravo contends that he received ineffective assistance of counsel. He claims that his trial counsel failed to (a) investigate the victim's probationary sentence, (b) cross-examine the victim on her status as an illegal alien, and (c) object to a question calling for a legal conclusion.

> To establish a claim of ineffective assistance of counsel, [Bravo] must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. There is a strong presumption that trial counsel's assistance

was adequate and that counsel's decisions were made within the bounds of reasonable professional judgment. Moreover, a trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous.

(Citations and punctuation omitted.) *Johnson v. State.*[4] See *Strickland v. Washington.*[5]

(a) *Failure to investigate victim's prior probationary sentence.* Bravo first complains that his trial counsel failed to investigate adequately the victim's prior probationary sentence for shoplifting. He claims that a thorough investigation would have revealed that the victim misrepresented her age to juvenile authorities so as to receive juvenile treatment, and that since in truth she was over 16 when the shoplifting occurred, her probationary sentence (which had been completed by the time of Bravo's trial) from the juvenile court was invalid. Thus, Bravo reasons, since her sentence from the juvenile court was void, the victim still had an unresolved shoplifting charge pending against her that would have been admissible to show that in giving her testimony here, she was only trying to please governmental authorities so as to receive leniency in the disposition of the "pending" shoplifting charge.

Bravo's fanciful leaps of logic do not square with reality. First, as a juvenile crime on which the victim had completed her sentence, the shoplifting charge was not admissible. *Baynes v. State.*[6] Second, even if admissible, the shoplifting crime was presented to the jury in any case and argued vociferously by Bravo's counsel in closing argument as a reason to disbelieve her. Third, even if the victim lied about her age to juvenile authorities, there is no evidence that she believed her lie invalidated her sentence and thus that she believed her testimony in Bravo's trial would possibly lead to leniency in the fictional world where her shoplifting charge would still be pending. Finally, trial counsel testified that he did investigate the shoplifting charge to the extent of his knowledge and ability. We discern no clear error in the trial court's finding that trial counsel's actions constituted effective assistance.

(b) *Failure to argue the victim's illegal alien status.* Bravo next argues that his trial counsel was ineffective because he failed to cross-examine the victim regarding her status as an illegal alien and

---

[4] *Johnson v. State*, 257 Ga. App. 30, 31 (570 SE2d 344) (2002).
[5] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).
[6] *Baynes v. State*, 218 Ga. App. 687, 690-691 (4) (463 SE2d 144) (1995).

that such cross-examination would have shown that her trial testimony was designed to curry favor with governmental authorities so as to avoid deportation. The undisputed evidence, however, shows that immediately following the incident and prior to her alien status becoming known to governmental authorities, the victim had reported Bravo's actions to police. Since her trial testimony was completely consistent with her immediate outcries to police, there was no logical reason to believe that her illegal alien status, known only later to police, motivated or shaded her trial testimony against Bravo. Indeed, her illegal alien status would have been a motive for her *not* to report the crime in the first place so that she could avoid all contact with law enforcement personnel, who could discover her illegal status and seek to have her deported. The fact that she reported the crime, even though she knew contact with police might lead to her deportation, lends credence to her outcry. Bravo's counsel wisely avoided this argument by not referencing the victim's illegal status. The trial court did not clearly err in finding against Bravo on this claim of ineffective assistance.

(c) *Failure to object to question calling for legal conclusion.* Bravo complains that his counsel did not object when the State asked an officer what "sex plus no" meant, to which the officer responded, "Rape." Notably, the prosecutor did not ask whether Bravo's conduct here constituted rape, but only asked the legal question as to what "sex plus no" meant. Although this question and answer were improper (see *Nichols v. State*[7] (witness may not draw legal conclusions)), it was not plain error so as to seriously affect the fairness or integrity of the trial. *Gosnell v. State.*[8] Indeed, Bravo was unable to show prejudice from this action by his trial counsel, as this single statement regarding the definition of rape was not so significant as to have contributed to the jury's verdict, especially in light of the consistency in the victim's statements, the evidence of injury to the victim, and Bravo's statements to police corroborating much of the victim's testimony. See id. at 512 (3). The trial court's findings against Bravo in this regard were not clearly erroneous.

2. Bravo contends that the State failed to prove venue in Fulton County. He claims that the testimony of the officer who stated that the incident occurred in Fulton County was nonprobative hearsay testimony. We disagree.

The victim testified that the assault occurred when Bravo pulled his van over on the shoulder of Georgia Highway 400 at Exit No. 6 (Northridge exit). A Fulton County police officer who investigated the

---

[7] *Nichols v. State*, 177 Ga. App. 689, 693 (2) (340 SE2d 654) (1986).
[8] *Gosnell v. State*, 247 Ga. App. 508, 510 (2) (c) (544 SE2d 477) (2001).

case testified that the described area was in Fulton County. Where the victim testifies where the crime took place, and an officer identifies that location as being within a certain county, the officer's testimony is not hearsay. *Branesky v. State;*[9] *Jones v. State.*[10] In addition to this direct testimony of venue (*Jones,* supra at 598 (2)), the testimony that the officer investigating the crime was a Fulton County officer provided further evidence that the crime took place in Fulton County since "public officials are believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise." *Chapman v. State.*[11] See *Branesky,* supra at 35 (2). Ample evidence proved venue here.

3. Bravo claims that the court erred in responding to a jury question as to whether a toy gun was a firearm. However, Bravo induced any such error.

The court had a lengthy discussion with the parties before deciding how to answer the jury's question whether a toy gun was a firearm. Bravo proposed that the court re-read to the jury the instructions on rape and possession of a firearm during the commission of a felony. When the court proposed telling the jury "a toy gun is not a firearm," Bravo objected. The court then proposed telling the jury that they had heard the testimony and would have to decide for themselves, to which Bravo's counsel stated, "That's fine." The court complied with the arrangement, re-reading the instructions and informing the jury they would have to use their common sense to decide. Bravo neither raised nor reserved an objection.

"Induced error is impermissible." *Edwards v. State.*[12] Inasmuch as the court was merely acting in agreement with Bravo, we discern no reversible error.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED AUGUST 6, 2004 —
RECONSIDERATION DENIED AUGUST 25, 2004 — 

*Steven E. Phillips,* for appellant.
*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, Assistant District Attorney,* for appellee.

---

[9] *Branesky v. State,* 262 Ga. App. 33, 35 (2) (584 SE2d 669) (2003).
[10] *Jones v. State,* 246 Ga. App. 596, 597 (2) (539 SE2d 602) (2000).
[11] *Chapman v. State,* 275 Ga. 314, 317 (4) (565 SE2d 442) (2002).
[12] *Edwards v. State,* 235 Ga. 603, 604 (2) (221 SE2d 28) (1975).