## A06A2473. WILLIAMS v. THE STATE.
### (643 SE2d 749)

MIKELL, Judge.

A jury convicted Howard Williams of charges including rape, aggravated sodomy, and incest arising from his contact with his daughter, an eighth grader. Williams now appeals, arguing that the evidence was insufficient, that the trial court erred when it admitted testimony concerning similar transactions and videotapes owned by Williams, and that the sentence Williams received amounted to an ex post facto law. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence."[1] We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

Viewed in the light most favorable to the jury's verdict, the record shows that during the 2001-2002 academic year, when the victim was 14 to 15 years old, in the eighth grade, and living with her parents, her father, Howard Williams, began having sex with her. During intercourse, the victim would tell him to stop, pushing him and hitting him on his side, but he would not. In attempting to obtain oral sex from her, Williams touched the victim's lips with his penis. Williams also fondled the victim's breasts, inserted his finger into her vagina, and licked her vagina. Williams often asked the victim to watch pornographic videotapes, and would sometimes call the victim from the house to the garage, where he would stick his tongue into her mouth. The abuse occurred as often as three times a week for some months. The victim did not tell her mother about the abuse because she was

---

[1] (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

afraid Williams would hurt her. The victim has been diagnosed as "mildly intellectually disabled," and is several years behind others her age in school.

The victim eventually told one of her half-sisters about the abuse, and the half-sister told the victim's mother. When the mother asked the victim in July 2004 if Williams had ever touched her, the victim put her head down, began crying, and nodded. Under questioning from the mother, Williams admitted that he had touched the victim inappropriately but became angry when he was accused of having sex with her. After his crimes had been reported to the police, Williams told his son that he had touched the victim to "show[ ] her so that no other boy would mess with her." Finally, as the victim's sisters were packing to leave the house, and under questioning from them, Williams said that he had raped the victim "the first time but all the other times was [the victim]," and that "he forced her to [have intercourse] the first time and the rest of the times that she wanted it." Williams also wrote a note in which he apologized for "everything I've did [w]rong," stating that the victim "should not blame herself" and that he himself was "the only one to blame."

Williams was charged with rape (Count 1), aggravated sexual battery (Count 2), two counts of aggravated sodomy (Counts 3 and 4), incest (Count 5), statutory rape (Count 6), three counts of child molestation (Counts 7 through 9), and enticing a child for indecent purposes (Count 10). Before trial, the state proffered evidence of similar transactions, including testimony by one of Williams's other daughters that he molested her as well as a partial transcript of Williams's testimony at his 1978 trial for molesting a ten-year-old girl. After a hearing, the trial court authorized the admission of the evidence. After the jury returned a guilty verdict on all counts except aggravated sexual battery, the trial court merged the incest and statutory rape counts and the last of the child molestation counts into the rape count and sentenced Williams to life in prison. His motion for new trial was denied.

1. (a), (b) Williams first contends that the evidence was insufficient to sustain his convictions for rape and aggravated sodomy under OCGA §§ 16-6-1 (a) (1) and 16-6-2 (a). We disagree.

Where an indictment alleges that a defendant placed his penis in the mouth of a minor, the state need only prove "[s]ome contact between [the defendant's] sexual organ and the mouth of the minor" in order to obtain a conviction for sodomy.[3] As an element of both rape and aggravated sodomy, force "may be inferred by evidence of intimidation arising from the familial relationship," and may be proved by

---

[3] (Footnote omitted.) *Turner v. State*, 231 Ga. App. 747 (1) (500 SE2d 628) (1998).

direct or circumstantial evidence.[4] "Lack of resistance, induced by fear, is not legally cognizable consent."[5] Here, the victim testified that she physically resisted Williams's sexual advances, to no avail. A jury could reasonably conclude from this and other testimony that Williams was guilty of both rape and aggravated sodomy.

(c) The jury could also reasonably conclude from testimony by the victim and her siblings that Williams was the biological and/or legal father of them all. The evidence sufficed to sustain Williams's conviction for incest as well.[6]

2. Williams next contends that the trial court erred when it admitted testimony from an adult daughter of Williams, who testified that he had molested her many years before when she was thirteen years old, as well as testimony from a third woman, who testified that Williams, who was living with her and her mother at the time, had sodomized and raped her when she was ten years old. Williams also argues that the introduction of his own testimony in the 1978 trial infringed on his right against self-incrimination. We disagree.

When made after a hearing conducted in compliance with Uniform Superior Court Rule 31.3 (B), a trial court's decision to admit similar transaction evidence will not be disturbed without a showing that it abused its discretion.[7]

> The rules regarding the use of similar transaction evidence are construed most liberally in cases involving sexual offenses. The lapse of time between the charged offense and the similar transaction must be considered when deciding whether to admit evidence of independent crimes; however, particularly in cases involving the sexual exploitation of young family members over generations, the remoteness in time is not wholly determinative, but goes to weight and credibility.[8]

At the pretrial hearing, the state moved for the allowance of evidence that Williams fondled the second daughter's breasts and thighs in the late 1970s, and also proffered a transcript of Williams's trial for rape in connection with his 1978 contact with his girlfriend's ten-year-old daughter. The trial court ruled that both transactions

[4] (Citation omitted.) *Long v. State*, 241 Ga. App. 370, 371 (2) (526 SE2d 875) (1999).

[5] (Citation omitted.) Id.

[6] See OCGA § 16-6-22 (a) (defining incest as sexual intercourse with "a person to whom [the defendant] knows he . . . is related either by blood or by marriage," including "[f]ather and daughter or stepdaughter").

[7] See *Brooks v. State*, 230 Ga. App. 846 (1) (498 SE2d 139) (1998).

[8] (Citations omitted.) *Nichols v. State*, 221 Ga. App. 600, 601-602 (3) (473 SE2d 491) (1996).

were admissible to show course of conduct, bent of mind, and lustful disposition; that there was sufficient evidence to establish that Williams committed these other acts; and that there was sufficient similarity between these acts and the crime charged.

Like the case-in-chief, these similar transactions involved Williams's molestation of underage female family members between the ages of ten and fifteen who were living in the same house as he. The time lapse between the similar transactions and the case-in-chief was a matter of weight and credibility, and "the sexual molestation of young children, regardless of sex or type of act, is sufficient similarity to make [such] evidence admissible."[9] We therefore conclude that the trial court did not abuse its discretion when it admitted evidence concerning these transactions.[10] Nor was there any error in the admission of Williams's own testimony in the 1978 trial, since his statements therein were competent evidence in the case-in-chief.[11]

3. Williams also contends that the trial court erred when it admitted videotapes of the kind identified by the victim as those she was asked to watch. We disagree.

The Supreme Court of Georgia has held that

[i]n a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity. Under this rule, sexually explicit material cannot be introduced merely to show a defendant's interest in sexual activity. It can only be admitted if it can be linked to the crime charged.[12]

Here, one of the victim's sisters testified that she found three of the four admitted pornographic videotapes in the garage and the other in the house. The victim testified that Williams kept videotapes of "naked people" in his bedroom dresser, that he asked her to watch them with him, and that she "usually" responded by telling him that she was "going outside" or was "busy." The victim also testified, however, that the videotapes showed the naked people "having sex

---

[9] (Punctuation and footnote omitted.) *Copeland v. State*, 276 Ga. App. 834, 837 (1) (625 SE2d 100) (2005).

[10] See *Nichols*, supra (no abuse of discretion in admitting testimony of two daughters molested by defendant twenty-four and twenty-seven years before trial); compare *Gilstrap v. State*, 261 Ga. 798, 799 (1) (b) (410 SE2d 423) (1991) (a similar transaction "31 years in the past is too remote") (footnote omitted).

[11] See *Foster v. State*, 157 Ga. App. 554, 555-556 (278 SE2d 136) (1981) (admissions in judicio are competent evidence in subsequent proceeding).

[12] *Simpson v. State*, 271 Ga. 772, 774 (1) (523 SE2d 320) (1999).

together." Because this testimony provides a sufficient link between the videotapes and the charged crime of enticing a minor for indecent purposes, the trial court did not err when it admitted them for the jury's consideration.[13]

4. Finally, there is no merit to Williams's contention that his sentence of life imprisonment as a recidivist child molester under OCGA § 16-6-4 (b) rendered that statute an unconstitutional ex post facto law. The fact that Williams's prior conviction subjected him to increased punishment in the wake of his conviction in the case-in-chief "does not somehow convert the statute into an unconstitutional ex post facto law" as applied to him.[14] Instead, "the statute punishes only for a future offense, which punishment is rationally enhanced by the prior conviction."[15]

For all these reasons, the trial court did not err when it denied Williams's motion for new trial.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 21, 2007 —
RECONSIDERATION DENIED MARCH 19, 2007.

*Michael R. McCarthy, Bentley C. Adams III, Wayne H. Basford,* for appellant.

*Kermit N. McManus, District Attorney, Mark P. Higgins, Jr., Assistant District Attorney,* for appellee.

---

[13] See *Ferrill v. State,* 278 Ga. App. 132, 134 (3) (628 SE2d 217) (2006) (videotapes containing the word "cherry" in their titles were properly admitted when the victim recalled that word on the videotapes shown to her by the defendant); *Johnson v. State,* 274 Ga. App. 69, 73 (3) (616 SE2d 848) (2005) (approving admission of videotapes watched by defendant and victim together and containing acts similar to those with which defendant was charged).

[14] *Denson v. State,* 267 Ga. App. 528, 529 (600 SE2d 645) (2004).

[15] (Citation omitted.) Id.