A08A1419. MAHONE v. THE STATE.
(668 SE2d 303)

MIKELL, Judge.

Marvis R. Mahone was convicted of child molestation by a Spalding County jury and was sentenced to serve 20 years.[1] On appeal, Mahone challenges the sufficiency of the evidence and argues that the state failed to prove the elements set forth in the indictment. Mahone also enumerates as error the state's failure to prove venue and the denial of his motion for directed verdict. We affirm.

Regarding sufficiency of the evidence, the standard of review is clear: On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the

---

[1] The sentence was to run consecutive to the sentence Mahone was serving at the time of the verdict.

verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[2] Conflicts in the testimony of the witnesses, including the [s]tate's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.[3]

Viewed in the light most favorable to the verdict, the evidence shows that the victim, fifteen-year-old T. A., who was sixteen years old at the time of trial, testified that on September 29, 2006, she was at home with her brothers and her cousin while her mother was away at work. T. A. testified that she lived in Apartment J2 at Spalding Heights, which was located in Spalding County. After arguing with her oldest brother, T. A. left the apartment at about 9:00 p.m. to visit the apartment of Shaquala, whom T. A. referred to as a girl whose name started with an "S." Also at the apartment were Enois Sparks, Jr., whom T. A. called "Pig," Gabby, Pete, and Mahone. T. A. described Mahone as "a cool person that I knew" and testified that prior to that evening, she and Mahone had, at most, only greeted each other. Pete and Shaquala were dating at the time, Sparks and Gabby had four children together, who were also present in the apartment.

T. A. testified that she was watching television and was asked to watch the children, and that Pete, Shaquala, and Mahone left. Sparks and Gabby stayed but fell asleep in one of the two bedrooms in the apartment. T. A. put the children to sleep. Three of them slept in the room with Sparks and Gabby, and the baby slept in a crib in the second bedroom. Also located in the second bedroom were a bed, dresser, radio, and a small table.

After putting the children to sleep, T. A. fell asleep in a chair while watching television and was awakened when Mahone repeatedly told her to come here. T. A. moved to the couch in the room, and Mahone sat next to her. Mahone pulled T. A. into the second bedroom then touched her on the chest with his hands before pushing her onto the bed where he kissed her on her chest and tried to take off her shirt and pants. T. A. testified that she was trying to push

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] (Citation and footnote omitted.) *Shorter v. State*, 271 Ga. App. 528-529 (1) (610 SE2d 162) (2005).

Mahone off of her when Sparks walked into the room, at which point Mahone stood up. Mahone then closed the door as T. A. stood next to the baby's bed. Sparks opened the door again and ordered everyone out of the room. According to T. A., Mahone left the room, but she knelt behind the door until Sparks returned and told her not to be afraid to come out of the room. T. A. sat with the children in the first bedroom until someone told her that her mom was looking for her. Her mother arrived and whipped T. A. because she had heard that Sparks caught T. A. in the room with her pants off and that Mahone was on top of her. T. A. testified that she talked to the police that night and went to the hospital. T. A. identified Mahone at trial as the man who touched and kissed her on her breast.

Sparks testified at trial that Mahone and his brother, Pete, were friends; that on the evening in question, he and Gabby were at the home of Pete's girlfriend, Shaquala, that T. A. was supposed to be babysitting; that he walked into the second bedroom and saw Mahone and T. A. talking and both of them were clothed; and that he did not talk to anyone about what he had seen as Mahone and T. A. were just talking.

Investigator Vicki Massengale of the Spalding County Sheriff's Department testified that she was contacted to investigate a potential child molestation at Spalding Heights; that she spoke to T. A., who very reluctantly told her about the evening and that Mahone kissed her on the neck and her chest, pushed her on the bed, and tried to pull off her pants and shirts; and that T. A. was very shaken and upset. Massengale went to the hospital with T. A. and gave a rape kit to Nurse Cynthia Johnson, who testified that she performed a breast swab on T. A. as a part of the rape kit. Massengale surrendered the sealed rape kit to the evidence custodian and later secured a search warrant to get buccal swabs from Mahone for the purpose of obtaining his DNA. Massengale testified that she obtained Mahone's statement on or about October 9, 2006, in which he said that he was never alone with T. A. on the night in question and did not touch her.

Dr. Justina Mason testified that she saw T. A. at 2:30 a.m. on September 30, 2006, and that she completed the rape kit provided by the police and found no evidence of rape or trauma. Julie Gates, who was a supervisor over the crime scene investigation unit of the Spalding County Sheriff's Department, testified that she collected the buccal swab from Mahone on October 10; that she took possession of the rape kit from Massengale; and that she completed the submission form for the kit to be transported to the crime lab. Cynthia Sequin, a forensic biologist with the Georgia Bureau of Investigation, testified that the breast swabs from T. A. contained the DNA profile of Mahone.

1. In his first and fourth enumerated errors, Mahone argues that the evidence was insufficient because it did not prove that he touched or kissed T. A.'s breast as alleged in the indictment and that therefore, his motion for directed verdict of acquittal should have been granted. In his third enumerated error, Mahone argues that the state failed to prove the elements of its indictments.[4] We address these errors simultaneously as "[t]he standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction."[5] As stated earlier, we do not weigh the evidence or judge witness credibility, but "defer to the jury's decision on the proper weight and credibility to be given the evidence, because it is the jury's role to choose what evidence to believe and what to reject."[6] Where there is competent evidence, even though contradicted, that supports each fact necessary to support the state's case, we will uphold the jury's verdict.[7] As the testimony of one witness is generally sufficient to establish a fact,[8] T. A.'s testimony that Mahone kissed her chest, alone, was sufficient to establish Mahone's guilt beyond a reasonable doubt within the meaning of *Jackson v. Virginia*.[9] Additionally, Mahone's DNA was found on the swabs taken of T. A.'s breast, rendering the evidence against Mahone overwhelming. Therefore, we reject Mahone's challenges to the sufficiency of the evidence.

2. Next, Mahone argues that the state failed to prove venue beyond a reasonable doubt. We disagree.

"Generally, a criminal action must be tried in the county in which the crime was committed (Ga. Const. 1983, Art. VI, Sec. II, Par. VI; OCGA § 17-2-2 (a)), and the [s]tate may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence."[10] "Whether the evidence as to venue satisfied the reasonable-doubt standard was a question for the jury[,]"[11] and "its decision will not be set aside if there is any

---

[4] In his brief, Mahone offers no citation to the record, argument, or citation of authority in connection with this enumerated error. However, since the argument is related to his challenge to the sufficiency of the evidence, it is addressed in Division 1.

[5] (Punctuation and footnote omitted.) *Thomas v. State*, 291 Ga. App. 795, 797 (1) (662 SE2d 849) (2008).

[6] (Citations and punctuation omitted.) *Johnson v. State*, 280 Ga. App. 341, 342 (2) (634 SE2d 134) (2006).

[7] See *Howard v. State*, 291 Ga. App. 289 (661 SE2d 644) (2008).

[8] See OCGA § 24-4-8.

[9] Supra.

[10] (Citations omitted.) *Prudhomme v. State*, 285 Ga. App. 662, 665 (2) (647 SE2d 343) (2007).

[11] *Moody v. State*, 279 Ga. App. 457, 459 (631 SE2d 473) (2006).

evidence to support it."[12] In the instant case, T. A. testified that she lived in Spalding Heights, which was located in Spalding County, and that the incident occurred at another apartment, which the evidence revealed through Sparks's testimony was also located in Spalding Heights. "This evidence was sufficient to prove venue in [Spalding] County beyond a reasonable doubt."[13] Accordingly, this enumerated error fails.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 2, 2008.

*George H. Weldon*, for appellant.

*Scott L. Ballard, District Attorney, Gail M. Travillian, Assistant District Attorney*, for appellee.

---

[12] (Punctuation and footnote omitted.) *King v. State*, 271 Ga. App. 384, 385 (1) (609 SE2d 725) (2005).

[13] (Citations omitted.) *Flanders v. State*, 285 Ga. App. 805, 806 (2) (648 SE2d 97) (2007) (victim's testimony that crime occurred at aunt's house and aunt's testimony that she lived in county where the defendant was charged established venue).