A08A1667. PAREJA v. THE STATE.

(673 SE2d 343)

DOYLE, Judge.

A Fulton County jury found Joaquin Pareja guilty of one count of child molestation. Pareja appeals from the denial of his motion for new trial, challenging the sufficiency of the evidence. He also contends that the trial court erred in admitting similar transaction evidence and that trial counsel provided ineffective assistance. For reasons that follow, we affirm.

On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the verdict.[1] We neither weigh the evidence nor determine witness credibility, but only determine the sufficiency

---

[1] See *Mahone v. State*, 293 Ga. App. 790, 790-791 (668 SE2d 303) (2008).

of the evidence.[2]

> Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.[3]

Viewed in this light, the evidence shows that Pareja and his wife were friends with Grace Chamorro. In November 2005, Chamorro's five-year-old daughter, N. O., told her that "Uncle Joaquin" had "cleansed" her vagina the preceding day. According to Chamorro, N. O. stated that she felt "shameful" and told her mother not to tell anyone about the incident. When Chamorro inquired further, N. O. stated that Pareja cleaned her "hundreds" of times and told her that "when little children are cleansed, it is normal for them to itch, and because of itching[,] they will laugh." N. O. demonstrated to her mother that Pareja cleaned her while she was on her hands and knees on the bed and also while she was on her back with her legs spread.

Chamorro took N. O. to Dr. Meghan Nicolini, a private psychologist. Nicolini testified that N. O. told her that her uncle "wiped her private parts a hundred times," initially with his hands and then with a towel.[4] Nicolini asked N. O. whether Pareja "might have been cleaning her," and the child responded, "No." N. O. also told her that she tried to move away from Pareja during the incident(s), but he pulled her legs and instructed her to remain still. Nicolini contacted the Department of Family and Children Services, who assigned case manager Araina Williams to the investigation. Williams interviewed Pareja, and he told her that he wiped N. O. "to clean her" after she complained to him that she was "itchy."

N. O. testified at trial, stating that Pareja touched her "in the private" with his hand and with a towel after she told him that she was itching. She told Pareja to stop, but he refused. During the trial, the child demonstrated the touches on a doll, opening the doll's legs and rubbing its vaginal area with her fingers. The State also played the videotaped forensic interview of N. O. for the jury.

---

[2] See id. at 791.

[3] (Punctuation omitted.) *Shorter v. State*, 271 Ga. App. 528, 528-529 (610 SE2d 162) (2005).

[4] Based on N. O.'s statements to her, Nicolini inferred that the repeated touches occurred during two or three separate incidents.

At trial, Pareja testified that he used a wet towel to clean N. O.'s buttocks and vaginal area after she had a soft bowel movement. Pareja denied using his bare fingers or touching N. O. improperly.

The State also presented similar transaction evidence. D. R., who was friends with one of Pareja's daughters as a child, testified that she spent the night at Pareja's home when she was 12 years old. D. R. awoke and realized that Pareja's fingers were inside her vagina; he left the room after D. R. screamed. In another incident, Pareja awakened D. R., took her into the bathroom, and forced her to masturbate him and to perform oral sex. According to D. R., she never told anyone about the incidents until Pareja's daughter called to tell her that her father had been accused of child molestation.

1. Pareja argues that the evidence was insufficient to sustain his conviction for child molestation. We disagree.

"A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[5] Pareja maintains that the State failed to prove that he touched N. O. "for the purpose of gratifying himself." We find this claim unpersuasive.

> The intent with which an act is done is peculiarly a question of fact for determination by the jury. Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this. The jury could certainly infer from [Pareja's] actions that he acted with the intent to arouse or satisfy his sexual desires.[6]

Having reviewed the record, we conclude that the evidence was sufficient for any rational trier of fact to find Pareja guilty beyond a reasonable doubt of child molestation.[7]

2. Pareja further contends that the trial court erred in admitting similar transaction evidence regarding his prior molestation of D. R. Specifically, he argues that the evidence was inadmissible because it was not sufficiently similar to the instant case and because the incidents involving D. R., which occurred approximately 26 years prior to his conviction in this case, were too remote in time. We disagree.

---

[5] OCGA § 16-6-4 (a).

[6] (Citation and punctuation omitted.) *Duvall v. State*, 273 Ga. App. 143 (1) (a) (614 SE2d 234) (2005). See *Bryson v. State*, 282 Ga. App. 36, 38-39 (1) (b) (638 SE2d 181) (2006); *Ney v. State*, 227 Ga. App. 496, 498 (1) (489 SE2d 509) (1997).

[7] See *Duvall*, 273 Ga. App. at 143.

> [I]n crimes involving sexual offenses, evidence of simi-
> lar previous transactions is admissible to show the lustful
> disposition of the defendant and to corroborate the victim's
> testimony. There need only be evidence that the defendant
> was the perpetrator of both acts and *sufficient similarity* or
> connection between the independent crime and the offenses
> charged. The trial court's decision to admit similar trans-
> action evidence will not be disturbed absent an abuse of
> discretion.[8]

" 'It is well established that similar transactions need not be identical to be admitted, and in cases involving sexual offenses, that rule is to be liberally construed.' "[9]

Here, where both the instant case and the similar transactions involved Pareja molesting an underage female who was in his home, we conclude that there was sufficient similarity between the prior acts and the crime charged.[10] "[T]he sexual molestation of young children, regardless of sex or type of act, is sufficient similarity to make such evidence admissible."[11]

Moreover, the gap in time between the incidents involving D. R. and the instant case does not render the similar transaction inadmissible as a matter of law. "[W]hile the passage of time is one of the more important factors to weigh in considering the admissibility of the evidence in question, it is not wholly determinative."[12] Although the Supreme Court of Georgia has held that a lapse of 31 years is, as a matter of law, too remote,[13] "the lapse of time generally goes to the weight and credibility of the evidence, not to its admissibility."[14] Thus, we have affirmed the admission of similar transaction evidence that was more than 20 years older than the charged offense.[15]

Here, while a significant amount of time elapsed between the

---

[8] (Citation and punctuation omitted; emphasis in original). *Boileau v. State*, 285 Ga. App. 221, 224 (2) (645 SE2d 577) (2007).

[9] *Parker v. State*, 283 Ga. App. 714, 721 (3) (642 SE2d 111) (2007).

[10] See *Williams v. State*, 284 Ga. App. 255, 258 (2) (643 SE2d 749) (2007).

[11] (Punctuation omitted.) Id. at 258 (2).

[12] (Citation omitted.) *Mullins v. State*, 269 Ga. 157, 158 (2) (496 SE2d 252) (1998).

[13] See *Gilstrap v. State*, 261 Ga. 798, 799 (1) (b) (410 SE2d 423) (1991).

[14] (Citations and punctuation omitted.) *Hinton v. State*, 280 Ga. 811, 817 (6) (631 SE2d 365) (2006) (similar transaction evidence that occurred 17 years prior to charged crime was admissible).

[15] See *Calloway v. State*, 287 Ga. App. 265, 266-267 (651 SE2d 190) (2007) (upholding admission of similar transaction evidence of the defendant's molestation of other family members that occurred 15 and 26 years previously); *Delk v. State*, 274 Ga. App. 261, 262-264 (2) (619 SE2d 310) (2005) (similar transaction evidence of the defendant's molestation of other granddaughter that occurred 25 years previously was admissible); *Shorter*, 271 Ga. App. at 530 (2) (upholding admission of similar transaction evidence of the defendant's prior molestations occurring 26 years previously); *Nichols v. State*, 221 Ga. App. 600, 601-602 (3) (473 SE2d 491)

prior acts involving D. R. and the charged offense, the acts were sufficiently similar and therefore admissible. Thus, the trial court did not abuse its discretion in admitting the similar transaction evidence.[16]

3. Pareja also maintains that he received ineffective assistance of counsel. Specifically, he argues that his trial counsel failed to impeach N. O.'s mother with her status as an illegal alien and to subpoena N. O.'s case file from the Georgia Center for Children.

To prevail on his claim that he was denied effective assistance of counsel, Pareja

> must show both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. There is a strong presumption that trial counsel's assistance was adequate and that counsel's decisions were made within the bounds of reasonable professional judgment. Moreover, a trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous.[17]

(a) Pareja contends that trial counsel's failure to impeach Chamorro with her status as an illegal alien constituted ineffective assistance. Specifically, he alleges that cross-examination regarding her status as an illegal alien would have shown that she was "living in constant violation of the law," that she was "*likely* committing numerous other crimes," and that, "as an illegal alien, Chamorro [had] a compelling motive to cooperate with governmental authorities."[18] However, the undisputed evidence shows that Chamorro took N. O. to be interviewed by Dr. Nicolini on December 2, 2005, and she spoke to the police regarding the incident immediately thereafter. Chamorro then further pursued the case by taking N. O. to the Georgia Center for Children in February 2006. Because Chamorro's

---

(1996) (similar transaction evidence of the defendant's sexual assault of other family members that occurred 24 and 27 years previously was admissible). Compare *Gilstrap*, 261 Ga. at 799 (1) (b); *Maynard v. State*, 282 Ga. App. 598, 602-604 (3) (639 SE2d 389) (2006) (holding that similar transaction evidence of the defendant's sexual misconduct of two male cousins 20 years previously, when the defendant was a minor, was inadmissible in his trial for aggravated child molestation with a female victim).

[16] See *Calloway*, 287 Ga. App. at 267; *Shorter*, 271 Ga. App. at 530 (2); *Nichols*, 221 Ga. App. at 602 (3).

[17] (Citations and punctuation omitted.) *Johnson v. State*, 257 Ga. App. 30, 31 (570 SE2d 344) (2002).

[18] (Emphasis in original.)

trial testimony was entirely consistent with her statements to Nicolini and the authorities,

> there was no logical reason to believe that her illegal alien status, known only later to police, motivated or shaded her trial testimony against [Pareja]. Indeed, her illegal alien status would have been a motive for her *not* to report the crime [against her daughter] in the first place so that she could avoid all contact with law enforcement personnel, who could discover her illegal status and seek to have her deported. The fact that she reported the crime, even though she knew contact with police might lead to her deportation, lends credence to her outcry. [Pareja's] counsel wisely avoided this argument by not referencing [Chamorro's] illegal status.[19]

Thus, the trial court did not clearly err in denying Pareja's motion for new trial on this basis.

(b) Pareja further contends that trial counsel's failure to subpoena N. O.'s case file from the Georgia Center for Children constituted ineffective assistance.[20] This argument provides no basis for reversal.

First, we note that the Center's file regarding N. O. was confidential and not subject to direct subpoena by Pareja.[21]

> "The proper procedure for obtaining access to such records in cases such as the one at bar is to petition the trial court to subpoena the records and conduct an in camera inspection as to whether the records are necessary for determination of an issue before the court and are otherwise admissible under the rules of evidence."[22]

However, even if trial counsel had petitioned the trial court to subpoena the file at issue, Pareja has not demonstrated that such action would have changed the outcome of the trial. Pareja's appellate counsel obtained a subpoena for the records in connection with his motion for new trial. The trial court conducted an in camera review of the records and found that the file contained no exculpa-

---

[19] (Emphasis in original.) *Bravo v. State*, 269 Ga. App. 242, 245 (1) (b) (603 SE2d 669) (2004).

[20] We note that Pareja does not enumerate as error the trial court's failure to provide the records to him.

[21] See OCGA § 49-5-40 et seq.; *Roberts v. State*, 229 Ga. App. 783, 784 (1) (494 SE2d 689) (1997).

[22] *Roberts*, 229 Ga. App. at 784 (1), quoting OCGA § 49-5-41 (a) (2).

tory material and nothing inconsistent with trial testimony. Therefore, because it appears that the trial court would not have required production of the file or its contents even if trial counsel had properly petitioned the court to subpoena the records, Pareja has not met his burden of establishing that the result of the trial would have been different.[23]

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 10, 2009 

*Garland, Samuel & Loeb, Donald F. Samuel, William C. Lea*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.