**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**June 3, 2020**

# In the Court of Appeals of Georgia

A20A0282. OATES v. THE STATE.

MERCIER, Judge.

A jury found Cornell Oates guilty of rape, statutory rape and child molestation. He appeals, contending that the evidence was insufficient to prove rape or venue, the trial court failed to take appropriate action after a witness made an improper remark, and the court made a harmful error in its jury instructions. Finding no basis for reversal, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

*Williams v. State*, 284 Ga. App. 255 (643 SE2d 749) (2007) (citations and punctuation omitted).

So viewed, the evidence showed the following. On the morning of May 18, 2015, 13-year-old T. H. was living with her mother and Oates, who was her mother's boyfriend. T. H.'s mother left home at around 7:00 or 8:00 a. m. to go to work, and Oates entered T. H.'s bedroom, where T. H. was in bed. T. H.'s mother had phoned Oates and asked him to wake T. H. for school. Oates told the mother that T. H. was already up. T. H. asked Oates why he had lied to her mother, but he did not answer. Oates then touched T. H.'s buttocks, removed her underwear, put his mouth on her vaginal and anal areas, and put his penis in her vagina.

T. H.'s mother returned home that morning, but T. H. did not tell her what had happened. Later that morning, Oates approached T. H., kissed her on the mouth and told her, "I only did it because I love both of y'all." When Oates and T. H.'s mother left the house, T. H. phoned her grandmother and told her that Oates had raped her. T. H. added that Oates had been touching her inappropriately "for a while." The grandmother phoned the police and reported the allegations.

Police officers and the grandmother arrived at the house around noon. The grandmother drove T. H. to a hospital, where she was examined by a sexual assault

2

nurse examiner and interviewed by a detective. The medical examination revealed reddening on T. H.'s vagina area, which the nurse (an expert in sexual assault examinations) testified was consistent with T. H.'s allegations. The nurse collected swabs of specimens from T. H.'s mouth, vagina, cervix and anus.

Oates went to the police station, where he gave a statement in which he denied T. H.'s allegations and where detectives collected swabs of specimens from his mouth and penis. Testing at the Georgia Bureau of Investigation crime lab revealed that samples taken from T. H.'s vagina and cervix contained DNA profiles matching the samples taken from Oates.

At trial, Oates testified that he had "no idea" why T. H. would tell the story she told. He claimed that on the morning in question, he went to T. H.'s room, knocked on the door, and told her her mother wanted to talk to her on the phone. According to Oates, T. H. then talked to her mother briefly, after which he took the phone back from T. H., "went in the room," lied down and went back to sleep.

1. Oates contends that the evidence was insufficient to prove that he committed rape because the State failed to prove the element of force. We disagree.

OCGA § 16-6-1 (a) (1) pertinently provides: "A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her

3

will[.]" Count 2 of the indictment alleged that Oates committed rape on or about May 18, 2015, by having carnal knowledge of T. H., forcibly and against her will.

As used in OCGA § 16-6-1 (a), "forcibly" means "with the use of 'acts of physical force, threats of death or physical bodily harm, or mental coercion.'" *Ponder v. State*, 332 Ga. App. 576, 580 (1) (b) (774 SE2d 152) (2015) (citation omitted).

> [A]lthough the victim's age of [13] does not establish the required element of force, the State was required to present only minimal evidence of force because the victim was under the age of consent. In such a case, intimidation may substitute for force. Further, force may be proved by direct or circumstantial evidence. Lack of resistance, induced by fear, is force, and may be shown by the victim's state of mind from her prior experience with the defendant and subjective apprehension of danger from him.

Id. at 581 (citation and punctuation omitted).

Only a minimal amount of evidence is required to prove force against a child. *Ponder*, supra at 582. Force may be inferred from intimidation arising from the familial relationship and may be proved by direct or circumstantial evidence. *Davenport v. State*, 316 Ga. App. 234, 236 (1) (b) (729 SE2d 442) (2012) (force element of rape was shown where defendant had sexually assaulted his stepdaughter repeatedly when she was a child); *Williams v. State*, 304 Ga. App. 592, 593 (1) (696

4

SE2d 512) (2010). Oates was 49 years old at the time of the crimes, was the live-in boyfriend of T. H.'s mother, entered 13-year-old T. H.'s bedroom when she was in bed and no one else was home, and performed sex acts upon her. That same day, T. H. phoned her grandmother and told her that Oates had raped her and had previously touched her inappropriately, and she went to live with her grandmother. The jury was authorized to infer from the evidence - particularly Oates's age, T. H.'s age, Oates's history of touching her inappropriately, the familial relationship, and the fact that no one else was home at the time to protect her - that Oates had used force against the child in order to engage in sexual intercourse with her. The evidence was sufficient to prove that Oates was guilty of rape beyond a reasonable doubt. See *Williams*, supra 284 Ga. App. at 256-257 (1) (a), (b).

2. Oates contends that the evidence was insufficient to prove venue in Chatham County because the State failed to present evidence showing the specific address at which the offenses allegedly occurred. We hold that the evidence was indeed sufficient to prove that the crimes occurred in Chatham County, where Oates was indicted and tried.

Venue is a fact that

the State must prove beyond a reasonable doubt in every criminal case. The State may meet its burden at trial using either direct or circumstantial evidence, and the determination of whether venue has been established is an issue soundly within the province of the jury. On appeal, [the appellate court] reviews a challenge to the sufficiency of the venue evidence just like [it] review[s] a challenge to the evidence of guilt: we view the evidence of venue in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.

*Worthen v. State*, 304 Ga. 862, 865 (3) (a) (823 SE2d 291) (2019) (citations and punctuation omitted). Notably, Oates cites no authority for his position that the State must prove the crimes occurred at a particular street address in order to establish venue.

T. H. testified that the crimes happened in her bed and that at that time she lived with her mother in Savannah, Chatham County, Georgia. Further, the lead detective in the case, an employee of the Savannah Police Department, testified that the home at which the crimes were committed was in Chatham County. Oates points to no evidence to the contrary. The evidence was sufficient. See *Borders v. State*, 299 Ga. App. 100, 101-102 (682 SE2d 148) (2009); see generally *Worthen*, supra at 866-868 (c) (jurors were entitled to make reasonable inferences from circumstantial

6

evidence regarding venue and, absent any indication that the location in question was not in the county alleged, were authorized to infer that the investigators acted within the scope of their territorial duties).

3. Oates contends that the trial court erred by failing to take corrective action after a detective testified that T. H. had been raped. He argues that because the prejudicial, conclusory statement invaded the province of the jury, the court should have ordered a mistrial or at least given curative instructions.

During cross-examination, defense counsel asked the detective why she had interviewed T. H. at the hospital instead of at the Coastal Children's Advocacy Center, when the "Chatham County child-abuse protocol" required interviews to be conducted at the Advocacy Center in cases of suspected child abuse. The detective replied, "[The protocol] says, 'Unless compelling reasons exist to the contrary, children always should be interviewed at the Advocacy Center." The following then transpired:

Q: And compelling reasons would be what?

A: In this case?

Q: Uh-huh.

A: She had to have a sexual assault kit done in reference to what occurred to

7

her. *She was raped*. So we do the interview - -

(Emphasis supplied.)

Defense counsel objected "to the conclusion." The court did not expressly rule on the objection, but directed counsel to proceed. Defense counsel continued with his examination, without requesting a curative instruction or moving for a mistrial.

In context, the detective's testimony is most fairly seen as an attempt to explain her own conduct in interviewing T. H. at the hospital (in response to challenges by defense counsel) rather than an opinion on the ultimate issue of whether Oates had raped T. H. See generally *Grier v. State*, 305 Ga. 882, 885-886 (2) (a) (828 SE2d 304) (2019) (lay witnesses' testimony that the defendant must have been the killer was rationally based on their perceptions and helpful to understanding their testimony).

Further, because the detective was a lay witness, her remark was not barred even if it touched on the ultimate issue in the case. "In the case of lay witness testimony, an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue. OCGA § 24-7-704 (a)." *Mack v. State*, 306 Ga. 607, 609 (2) (832 SE2d 415) (2019) (citations and punctuation omitted); see generally *Grier*, supra ("[E]ven though [the non-expert witnesses'] opinion about who killed

8

the victims addressed an ultimate issue in the case, that alone does not make the testimony objectionable.").

Finally, even assuming that the trial court erred by failing to give, sua sponte, a curative instruction or to declare a mistrial based on the detective's remark, any such error was harmless because it is highly probable that the remark did not contribute to the verdict. See generally *Stephens v. State*, 307 Ga. 731, 734 (1) (a) (838 SE2d 275) (2020) (any error in the trial court's failure to give sua sponte a curative instruction or declare a mistrial based on prosecutor's closing remark was harmless because it was highly likely that the error did not contribute to the verdict); *Swims v. State*, 307 Ga. 651, 655 (2) (838 SE2d 751) (2020) ("Failure to give an unrequested curative instruction does not create reversible error.") (citation and punctuation omitted). T. H.'s grandmother had already twice testified that T. H. told her that Oates had "raped her." The nurse testified that she performed medical exams on patients "who have been sexually assaulted" and that T. H. "had reported to me that she was raped." And, in addition to the testimony at issue, the detective testified that she went to the hospital to speak to T. H. about a "sexual assault," that T. H. underwent a sexual assault examination while at the hospital and that the detective interviewed T. H. in "a separate room at the hospital that we use when sexual assaults

9

occur"; the detective also affirmed that the specific purpose of the room at the hospital was "for sexual assault victims." Oates did not object to any of the foregoing testimony. The detective's statement could not have surprised the jury and, given the evidence at trial and the context in which it was made, it is not likely that the remark affected the outcome. See generally *Thompson v. State*, 304 Ga. 146, 153-154 (9) (816 SE2d 646) (2018) (detective's testimony indicating that she believed the defendant was the shooter did not violate the "ultimate issue" rule because the jury already knew that the detective had investigated the crimes and obtained a warrant for the defendant's arrest, such that the detective's belief that the defendant committed the crimes would have come as no surprise to the jury).

4. Oates contends that the trial court erred by failing to properly instruct the jury on the definition of child molestation as alleged in Count 4 of the indictment.

OCGA § 16-6-4 (a) provides in relevant part: "(a) A person commits the offense of child molestation when such person: (1) Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[1] The trial court

---

[1] Count 4 of the indictment alleged that Oates committed child molestation on May 18, 2015, by committing "an indecent act to [T. H.], a child under the age of 16 years, with the intent to arouse the sexual desires of himself by removing said child's

10

instructed the jury that a person commits the offense of child molestation when he "does an act to a child less than 16 years of age with intent to arouse the sexual desires of the person." Oates asserts that the trial court's failure to include the word "indecent" in the instruction was harmful as a matter of law.

Where, as here, an appellant did not object to the charge at trial, we review the instruction only for "plain error" which affects the substantial rights of the parties.[2] See OCGA § 17-8-58 (b); *Shaw v. State*, 340 Ga. App. 749, 753-754 (2) (798 SE2d 344) (2017) (physical precedent only). In conducting plain error review,

> [t]he proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If all three of these questions are answered in the affirmative, the appellate court has the discretion to reverse if the error seriously affects the fairness, integrity or public reputation of the proceedings below.

---

underwear and touching her buttocks[.]"

[2] When the prosecutor brought the omission in the oral instruction to the court's attention before the jury began deliberating, the trial court replied that the word "indecent" was included in the written charge that was furnished to the jury. Defense counsel stated that he had no objection to the charge.

*State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citations and punctuation omitted). In this case, the error did not likely affect the outcome of the proceedings.

It is undisputed that the written copy of the jury charge that the trial court gave the jury for deliberations included the word "indecent" in the definition of child molestation. Likewise, the copy of the indictment that the court gave the jury for deliberations included the word "indecent" in the child molestation count. The trial court instructed the jury that the State had the burden of proving every material allegation of the indictment, and that the court would be providing copies of the indictment and instructions to the jury for use during deliberations. The trial court's written and oral instructions as a whole adequately informed the jury of the charges. "The burden was on [Oates], not the State, to show that the error likely affected the outcome of the trial. And here, we can find no evidence that the jury misunderstood the instructions on [child molestation]." *State v. Crist*, 341 Ga. App. 411, 417-418 (801 SE2d 545) (2017) (citation omitted). Oates has not shown that the error likely affected the outcome of the trial. See id. Nor has he shown he was prejudiced by the cumulative effect of multiple errors. See *State v. Lane*, _ Ga. _ (1) ( 838 SE2d 808,

12

815) (2020) (appellate court is to consider collectively the prejudicial effect, if any, of trial court errors and deficiency of counsel).

*Judgment affirmed. Miller, P. J., and Brown, J., concur.*