## A10A0223. STEPHENS v. THE STATE.

### (699 SE2d 558)

PHIPPS, Presiding Judge.

Bradley Stephens was indicted on three counts of aggravated child molestation, one count of rape, and one count of incest, for offenses involving his stepdaughter. A jury found him guilty of incest

and not guilty of the remaining charges. On appeal, Stephens challenges the sufficiency of the evidence to support the conviction, and the court's rulings on certain evidentiary matters, several requested jury charges, and his request to strike a juror for cause. None of these arguments presents any basis for reversal, so we affirm the conviction. Stephens also maintains that the trial court erred in amending his sentence to include special conditions of probation and parole. We find no merit to his argument regarding probation, but agree that the trial court erred in imposing restrictions that would be effective in the event of a subsequent parole; therefore, we vacate the sentence and remand the case for resentencing consistent with this opinion.

1. Stephens contends that the evidence was insufficient to sustain the incest conviction. We disagree.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

Viewed in a light most favorable to the verdict, the record shows that A. P.'s mother married Stephens in 1991, when A. P. was four years old. The couple remained married until 2006. A. P. testified that Stephens began having sexual intercourse with her in 1996, and he continued to do so through 2004. In 2004, when she was 16 years old, A. P. became pregnant. She knew that Stephens was her baby's father because she had not had sexual intercourse with anyone else. When she told Stephens she was pregnant, he gave her home pregnancy tests, told her she was going to get an abortion, signed a parental consent form, and took her to a medical facility where she underwent the procedure. A. P. testified that for years she had been unable to stop Stephens's abuse and had been afraid to report it, but that the abortion was the "final straw that broke the camel's back." Afterward, she was able to keep Stephens from abusing her and, when she was nearly 18 years old, she reported the abuse.

OCGA § 16-6-22 (a) provides, in relevant part, that a person commits the offense of incest when he engages in sexual intercourse with a person to whom he knows he is related either by blood or by marriage as follows: (1) father and daughter or stepdaughter. A. P.

---

[1] *Williams v. State*, 284 Ga. App. 255 (643 SE2d 749) (2007) (citations and punctuation omitted).

testified that Stephens had sexual intercourse with her while he was married to her mother. Because the testimony of a single witness is generally sufficient to establish a fact,[2] the evidence was sufficient in this case to support the incest conviction.[3]

Stephens's argument that the incest conviction cannot stand because it is inconsistent with the acquittals on the other charges is without merit.

> Georgia does not recognize an inconsistent verdict rule, which would permit a defendant to challenge the factual findings underlying a guilty verdict on one count as inconsistent with the findings underlying a not guilty verdict on a different count. A conviction on one count and acquittal on another related count may reflect a compromise or lenity by the jury rather than inconsistent factual conclusions, and Georgia courts generally will not look behind the jury's decision to convict on certain counts and acquit on other counts.[4]

2. Stephens contends that the trial court erred in allowing evidence that A. P. had an abortion in 2004. Stephens argues that evidence of the abortion "injected too much emotion into the trial" and that its probative value was substantially outweighed by its prejudicial effect.

> [U]nless the potential for prejudice in the admission of evidence substantially outweighs its probative value, the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it.[5]

The standard of review for the trial court's ruling on a challenge to evidence on the ground that its probative value is outweighed by its

---

[2] OCGA § 24-4-8.

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Lewis v. State*, 275 Ga. App. 41, 42 (1) (619 SE2d 699) (2005).

[4] *Smith v. State*, 282 Ga. App. 339, 341 (1) (638 SE2d 791) (2006) (citations and punctuation omitted).

[5] *Warren v. State*, 233 Ga. App. 699, 700 (2) (505 SE2d 777) (1998) (citation and punctuation omitted).

tendency to unduly prejudice the jury is abuse of discretion.[6]

A. P. testified that she had become pregnant, that Stephens was the only person with whom she had had sexual intercourse, that he had taken her to get an abortion, and that she was not able to stop the abuse or to report it until after the abortion. At trial, Stephens denied that he had sexual relations with his stepdaughter, and defense counsel cross-examined A. P. extensively regarding her delay in reporting the abuse. Evidence that Stephens took his stepdaughter to obtain an abortion was relevant to the issues of whether he had engaged in sexual intercourse with her, and what prompted her to report the abuse when she did. The trial court did not abuse its discretion in admitting the evidence, as the potential for its prejudice did not substantially outweigh its probative value.[7]

3. Stephens contends that the trial court erred in denying him access to A. P.'s MySpace.com records and school records. Stephens argues that the MySpace.com records were relevant to show "any alleged impact" of his alleged actions, "as well as to show [A. P.'s] mind set" regarding her mother's divorce from Stephens. He claims the school records were necessary to rebut testimony that A. P.'s grades dropped after the abortion.

Before trial, Stephens filed a motion for the trial court to obtain and conduct an in camera inspection of all MySpace.com records pertaining to A. P. Stephens asserted that the records might contain information bearing on the credibility of the state's witnesses. The court granted the motion. After inspecting the records and finding no exculpatory evidence therein, the court ruled that the records were not subject to disclosure pursuant to OCGA § 49-5-40 et seq.[8]

Stephens also filed a motion to obtain A. P.'s school records. Following its in camera inspection of those records, the trial court declined to release them to Stephens, stating that it had found no exculpatory evidence therein and that their disclosure was thus not necessary to resolve any issue in the case. Consequently, the court ruled, the records were not admissible pursuant to OCGA § 49-5-41.[9]

---

[6] *Wilson v. State*, 295 Ga. App. 802 (673 SE2d 304) (2009).

[7] See generally *Mims v. State*, 291 Ga. App. 777, 781 (1) (662 SE2d 867) (2008).

[8] OCGA § 49-5-40 (b) provides in pertinent part that each and every record concerning reports of child abuse which is in the custody of a state or local agency is confidential, and access thereto is prohibited except as provided in OCGA §§ 49-5-41 and 49-5-41.1. OCGA § 49-5-41 (a) (2) provides, in relevant part, that a court, by subpoena, shall have reasonable access to such records concerning reports of child abuse upon its finding that access to such records may be necessary for determination of an issue before such court; provided, however, that the court shall examine such records in camera, unless the court determines that public disclosure of the information is necessary for the resolution of an issue then before it and the record is otherwise admissible under the rules of evidence.

[9] Stephens does not argue that the court erred in applying these statutes to the records sought, so we do not decide that issue here.

A defendant who is denied access to certain information after the court performs an in camera inspection has the burden on appeal of showing both the materiality and the favorable nature of the evidence sought.[10] Mere speculation that the items the appellant sought to review contained exculpatory information does not satisfy this burden.[11] The trial court's discretionary ruling after an in camera inspection that all exculpatory material, if any, was produced establishes that as a fact absent a showing to the contrary.[12] Inasmuch as Stephens has not made such a showing,[13] we find no abuse of discretion in the trial court's denial of access to A. P.'s MySpace.com and school records.[14]

4. Stephens contends the trial court erred in its charge to the jury. "When reviewing an allegedly erroneous jury charge, this Court applies a 'plain legal error' standard of review. A jury charge must be considered as a whole and its parts read in conjunction with one another."[15]

(a) Stephens asserts that the trial court erred in giving the state's requested charge on prior consistent statements, arguing that the instruction was not supported by the evidence.

The court gave the following jury instruction:

Should you find that any witness has made a statement prior to the trial of this case that is consistent with that witness's testimony from the witness stand and such prior consistent statement is material to the case and the witness's testimony, then you are authorized to consider the other statement as substantive evidence.

In *Boyt v. State,*[16] we held that a nearly identical charge was overly complex and "impossible to understand."[17] "When jurors hear words which they do not understand, they discount or ignore those words."[18] And, as the Court noted in *Boyt*, this type of charge is flawed in that no instruction on this point is necessary.[19] After all, "[a] jury may consider *all* the words it hears as substantive evidence, unless the trial court tells it to disregard those words or unless the

---

[10] *Head v. Stripling*, 277 Ga. 403, 407 (1) (590 SE2d 122) (2003).

[11] Id.; *Pollard v. State*, 260 Ga. App. 540, 545 (4) (580 SE2d 337) (2003).

[12] *Dempsey v. State*, 279 Ga. 546, 548-549 (3) (615 SE2d 522) (2005).

[13] See id.

[14] Id.

[15] *Daniel v. State*, 296 Ga. App. 513, 518 (3) (675 SE2d 472) (2009).

[16] 286 Ga. App. 460, 465 (2) (649 SE2d 589) (2007).

[17] Id. at 466-467 (3).

[18] Id. at 466 (3).

[19] Id.

trial court at the moment the words are uttered cautions the jury that the testimony is admitted only for a limited purpose."[20] Thus, the error was harmless.[21]

(b) Stephens complains that the trial court refused to give one of his requested jury charges. It stated: "The state of a witness's feelings toward the defendant and her relationship to him may always be proved for consideration of the jury." Stephens contends this charge was supported by the evidence and should have been given to allow the jury to consider A. P.'s motives in accusing him. However, in its charge on witness credibility, the trial court instructed the jury in a way that substantially covered the principle set forth in the request.[22] There was no error.

(c) Stephens argues that the court erred in not giving his requested charge concerning abortion. As written, the requested charge stated:

> The court has admitted evidence that [the victim] had a legal abortion on [date]. The Defendant is on trial for the particular offenses charged in this Bill of Indictment only, and he is not on trial for any offense relating to the legal abortion. *The General Assembly of Georgia has determined that an abortion performed during the first trimester by a physician duly licensed to practice medicine and surgery, based upon their best clinical judgment that an abortion is necessary is legal. No personal, religious, moral or ethical beliefs that you as individual jurors hold on the issue of abortion in general or the legal abortion herein, should in any way enter into your deliberations upon the guilt or innocence of the particular offenses charged in this Bill of Indictment.* The Court does not express an opinion as to whether the Defendant has committed any of the offenses alleged in the Bill of Indictment, as this is solely a matter for your determination.[23]

The trial court read to the jury the first two sentences of the requested charge, but declined to read the italicized sentences.[24] According to Stephens, the entire charge was necessary because it would have protected him from "the inflammatory nature of the

---

[20] Id. at 466-467 (3) (emphasis in original).

[21] See id. at 468 (3).

[22] See generally *Rouse v. State*, 290 Ga. App. 740, 742-743 (1) (660 SE2d 476) (2008).

[23] (Emphasis supplied.)

[24] Although not at issue on appeal, we note that the court also covered the principle set forth in the final sentence of the requested charge – regarding the court's expression of opinion on the evidence, guilt or innocence of the accused – elsewhere in the jury instructions.

abortion issue.'' We disagree.

The third sentence essentially repeated the court's instruction in the previous sentence that the abortion was legal. And the court covered the principle addressed in the fourth sentence (that the jury was to be concerned only with the particular offenses charged in the indictment) elsewhere in its charge. Although the court did not specifically instruct the jury that its beliefs on the abortion issue should not enter into deliberations, the charge on the whole adequately informed the jury of the substance of the matters contained in the request to charge.[25] Stephens has not shown error.

5. Stephens contends that the trial court erred in amending his sentence to include special conditions of probation and parole. He argues that the trial court was not authorized to: (a) impose conditions of parole; (b) impose conditions of probation without informing him at the sentencing hearing what the conditions would be and without giving him an opportunity to object to or discuss the conditions; and (c) impose conditions of probation that were not a part of the sentence orally pronounced at the sentencing hearing.

The record shows the following. At the sentencing hearing on December 12, 2008, the trial court stated that Stephens would be sentenced to 20 years, with the first 10 years to be served in confinement and the balance on probation; while on probation, he would pay a fine and a probation fee, and would have no contact with the victim. The state remarked, ''Judge, before we finish up, I believe because of this charge there would be sex offender conditions on his probation. I believe that the new case law requires us to put that on the record.'' The court agreed, and defense counsel stated, ''Yes, sir.'' The court then stated, ''Obviously we are going to impose the sexual offender conditions as part of the sentence. Is there anything else?'' Defense counsel neither objected nor asked for clarification on the matter.

The sentencing order signed by the court December 12 and filed December 16 provided, among other things, that as a special condition of his probation, Stephens was required to register as a sex offender as required by OCGA § 42-1-12, undergo sex offender evaluation and treatment at his own expense, and have no contact with the victim.

On December 15, the court entered an order, filed on December 16, entitled ''ADDENDUM TO SENTENCE[:] SPECIAL CONDITIONS OF PROBATION AND PAROLE.'' It provided that Stephens was prohibited from engaging in the following activities: having any contact with the victim; having any contact with minors under the

---

[25] See *Anderson v. State*, 231 Ga. App. 807, 811 (3) (b) (499 SE2d 717) (1998).

age of 16, including his own children; having unsupervised contact with minors and providing complete information about any supervised contact to the probation department; residing with any minor, including his own children, without prior approval by the court; engaging in volunteer work or seeking employment requiring regular contact with children absent prior approval from the probation department; possessing pornographic materials or engaging in certain pornographic activities; and possessing, purchasing or consuming alcohol or controlled substances without a prescription. The order also provided, in sum, that Stephens was to: register as a sex offender pursuant to OCGA § 42-1-12; undergo sex offender evaluation and treatment at his own expense; abide by probation department curfew rules; obtain approval from the probation department of any employment; notify the probation department of dating and marital relationships involving the possibility of contact with the other party's children, and notify persons in such relationships of his sex offender status; submit to searches of his person, property, residence or vehicle whenever requested by a probation officer or other peace officer; submit to DNA testing at his expense; maintain a driving log; obtain advance approval from the probation department before renting a post office box; and not hitchhike or pick up hitchhikers.

(a) Stephens is correct that the court lacked authority to impose any conditions upon his parole.

The heading of the sentence addendum contains the words "SPECIAL CONDITIONS OF PROBATION AND PAROLE." Other than in the heading, there is no reference in the sentencing document to parole. Nonetheless,

> [a]ny attempt by a court to impose its will over the Executive Department by attempting to impose as a part of a criminal sentence conditions operating as a prerequisite of or becoming automatically effective in the event of a subsequent parole of defendant by the State Board of Pardons & Paroles would be a nullity and constitute an exercise of power granted exclusively to the Executive.[26]

Because the addendum to the sentence purports to impose restrictions upon Stephens's future parole (if granted), the sentence is a nullity.[27] We therefore vacate the sentence and remand the case

---

[26] *Withers v. State*, 254 Ga. App. 833, 835 (3) (563 SE2d 912) (2002).
[27] Id.

for resentencing consistent with this opinion.[28]

(b) Stephens argues that the trial court erred in not giving him the opportunity at the sentencing hearing to object to or to discuss "what '[the] sex offender conditions' were." As discussed above, the trial court expressly stated at the sentencing hearing that it would impose "sexual offender conditions" on the probated portion of his sentence. Stephens's counsel could have objected or asked for clarification, but did not. In any event, because the case is being sent back to the trial court for resentencing, Stephens's complaint about not being told what the "sex offender conditions" consisted of and not being given an opportunity to discuss or object to the conditions is rendered moot.

(c) Stephens's argument that the court was not authorized to impose conditions "that were not a part of the sentence orally pronounced" is without merit. Several of the conditions imposed in this case were specifically mandated by statute. For instance, Georgia law requires a person to register as a sex offender if, among other things, he is convicted on or after July 1, 2006, of a dangerous sexual offense;[29] incest, as set forth in OCGA § 16-6-22 and charged in this case, is a dangerous sexual offense.[30] OCGA § 42-1-12 (b) (3) and (f) make it mandatory for a sex offender to report and update his residential address. OCGA § 42-1-15 places restrictions on a sex offender residing, working, volunteering, and loitering within certain distances of areas where minors congregate. OCGA § 24-4-60 (b) requires an individual convicted of incest to have a sample of his blood, an oral swab, or a sample obtained from a non-invasive procedure taken for DNA analysis. And, even if the trial court had not specifically imposed sex offender registration as a condition of probation, Stephens was nonetheless required by statute to so register.[31]

The other special conditions of probation were also authorized. Probated sentences, upon reasonable conditions, have been used as effective tools of rehabilitation and serve a useful purpose in appropriate cases as an alternative to confinement.[32] As part of the broad discretion vested in trial courts by the probation statutes in Georgia, the appellate courts will approve "any reasonable condition imposed for probation" of a sentence by the trial court "[i]n the absence of express authority to the contrary."[33] Stephens has pointed to no

---

[28] Id. at 835-836 (3).

[29] OCGA § 42-1-12 (e) (1).

[30] OCGA § 42-1-12 (a) (10) (A) (xii).

[31] See *Petway v. State*, 291 Ga. App. 301, 302-303 (661 SE2d 667) (2008).

[32] *State v. Collett*, 232 Ga. 668, 670 (208 SE2d 472) (1974).

[33] *State v. Collett,* supra; see also *Walker v. Brown*, 281 Ga. 468 (1) (639 SE2d 470) (2007);

YALE LAW LIBRARY

authority expressly prohibiting a superior court from imposing upon his probation the listed conditions. He has not even argued, let alone demonstrated, that any of the conditions imposed are unreasonable or otherwise fail to bear a logical relationship to the rehabilitative scheme of the sentence pronounced for this crime.[34] It is important to recognize that "the probation supervisor's duty is to keep informed concerning the conduct, habits, associates, employment, recreation, and whereabouts of the probationer by visits, by requiring reports, or in other ways."[35] In light of the testimony and the nature of the offense of which Stephens was convicted,[36] the conditions of probation imposed were reasonable, and were not vague or overly broad.[37]

Finally, no notice or hearing was required for the sentencing trial court to modify the conditions of Stephens's probation.[38] Although an increase in his *sentence* after he began serving it would violate the prohibition against double jeopardy, the court's *modification of his probation* did not increase his sentence.[39]

6. Stephens contends that the trial court erred in overruling his request to strike a juror for cause. He argues that a prospective juror was vehemently opposed to abortion and was "obviously biased with no hope of rehabilitation."

Whether to strike a juror for cause is within the sound discretion of the trial court, and such a decision should not be disturbed unless there is an abuse of discretion.[40] It must be shown that the prospective juror holds an opinion of *the guilt or innocence of the defendant* that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based on the evidence presented and the court's instructions.[41]

During voir dire, the prospective jurors were asked whether anyone identified himself or herself as "pro-life" on the issue of abortion. The juror at issue answered affirmatively. She was later questioned individually, and stated that she was opposed to abortion

---

*Morgan v. State*, 285 Ga. App. 254, 260 (2) (645 SE2d 745) (2007); *Pitts v. State*, 206 Ga. App. 635, 637 (3) (426 SE2d 257) (1992).

[34] See *State v. Collett*, supra at 670-671.

[35] *Staley v. State*, 233 Ga. App. 597, 598-599 (505 SE2d 491) (1998).

[36] For example, there was evidence that Stephens had stayed out late or all night and came home intoxicated "many times," while intoxicated he had forced A. P. to have sexual intercourse with him and physically abused her younger brothers (Stephens's minor sons), that he had given A. P. rides to and from school, that he had touched A. P. inappropriately in the car and had sexual intercourse with her in his truck, and that police had seized his computer in search of "pictures" A. P. said he had taken.

[37] See *Ellis v. State*, 221 Ga. App. 103, 104 (2), 105 (3), (4) (470 SE2d 495) (1996).

[38] See *Gould v. Patterson*, 253 Ga. App. 603, 604 (2) (560 SE2d 37) (2002).

[39] Id.

[40] *Hornsby v. State*, 296 Ga. App. 483, 484-485 (2) (675 SE2d 502) (2009).

[41] Id.

under any circumstances. When asked if her "pro-life" position would prevent her "from sitting on a jury and coming to a judgment based on the evidence in a case where that would be a significant issue," the juror replied, "No." And when asked if her feelings about abortion "might bias or prejudice [her] in this case one way or the other," the juror responded, "No." Stephens has not shown that the juror held an opinion of his guilt or innocence so fixed and definite that she could not set it aside and decide the case based on the evidence presented. The trial court did not abuse its discretion in refusing to strike the prospective juror for cause.[42]

*Judgment of conviction affirmed. Sentence vacated and case remanded for resentencing. Miller, C. J., and Johnson, J., concur.*

DECIDED JULY 8, 2010 —
RECONSIDERATION DENIED JULY 23, 2010 — 

*Chandler, Britt, Jay & Beck, Walter M. Britt, James R. Little*, for appellant.

*Daniel J. Porter, District Attorney, Jon W. Setzer, Assistant District Attorney*, for appellee.

---

[42] See *Morris v. State*, 280 Ga. 184, 185 (2) (a) (625 SE2d 391) (2006).