**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 15, 2012**

# In the Court of Appeals of Georgia

A12A0146. DAVENPORT v. THE STATE.

MILLER, Judge.

Following a jury trial, Richard Lee Davenport was convicted of rape (OCGA § 16-6-1 (a) (1)), solicitation of sodomy (OCGA § 16-6-15 (a)), and incest (OCGA § 16-6-22 (a) (1)).[1] Davenport filed a motion for a new trial, which the trial court denied. Davenport appeals, contending that (1) the evidence was insufficient to sustain his convictions[2]; (2) that the trial court erred in failing to declare a mistrial

---

[1] Davenport was also found guilty of two counts of child molestation (OCGA § 16-6-4 (a) (1)), an additional count of rape, and two additional counts of incest. For purposes of sentencing, the trial court merged these additional counts into the rape and incest counts.

[2] Davenport challenges the sufficiency of the evidence with respect to the two child molestation counts, and the additional rape and incest counts. Footnote 1 makes clear that these counts were merged with other counts. "We need not consider an enumeration of error which addresses the sufficiency of the evidence to convict on

after the prosecutor made improper comments during closing argument; (3) that he received ineffective assistance of counsel; and (4) that the trial court erred in quashing his subpoena for the production of prosecutor's closing argument notes. For the reasons that follow, we discern no error and affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 [99 SC 2781, 61 LE2d 560] (1979).

(Citation omitted.) *Mullis v. State*, 292 Ga. App. 218 (664 SE2d 271) (2008).

So viewed, the evidence shows that Davenport married the victim's mother in October 2003, when the victim was 13 years old.[3] One morning shortly thereafter, the victim was alone with Davenport inside the family's home when he called her to his room. When the victim entered Davenport's room, he locked the door, sat her on top of the dresser, and began kissing her on the neck and touching her breasts and in

a count on which the trial court failed to enter judgment." (Citation and punctuation omitted.) *Campell v. State*, 311 Ga. App. 865, 865 n.2 (717 SE2d 494) (2011); see also *Nelson v. State*, 277 Ga. App. 92, 96 (1) (b) (625 SE2d 465) (2005).

[3] The State also presented evidence that in 1997, Davenport pled guilty to the offense of statutory rape against a 14-year-old girl, who was the younger sister of the victim's mother in this case.

between her legs. Davenport then picked up the victim, placed her on the bed, took off her clothes, and had sexual intercourse with her. The victim had asked Davenport to stop, but he refused.

The victim recounted several additional incidents in which Davenport had sexual intercourse with her. The victim approximated that, between October 2003 and April 2004, she and Davenport had sex approximately 80 times. Davenport warned the victim not to tell anyone what he was doing to her and threatened to send the victim's brother away if she reported him.

When the family moved in April 2004, Davenport briefly stopped having sexual intercourse with the victim; a month or two later, however, Davenport resumed his frequent sexual advances towards her. In 2005, the victim's cousin temporarily lived with the victim's family. Early one morning, the cousin was sleeping in the victim's room when she heard Davenport enter the room and have sex with the victim. When the victim reported the incident to her mother, Davenport took the victim into a room and whipped her.

Despite the reports to the victim's mother, nothing was done to stop Davenport from continuing to have sexual intercourse with the victim. In March 2008, Davenport offered to pay the victim money for oral sex. The victim finally told her

3

pastor that Davenport had been sexually assaulting her. The pastor subsequently contacted the police, and the victim was removed from the home and placed into foster care.

Upon turning 18 years old, the victim was forced to leave foster care, and she moved back in with her mother and Davenport in July 2008. The victim began locking her bedroom door in efforts to keep Davenport from sexually assaulting her. Davenport picked the lock, however, and he resumed the cycle of sexually assaulting the victim almost every day.

In January 2009, the victim called her brother for help, and the sexual abuse was reported to police again. Davenport was subsequently arrested and charged with various sexual assault offenses.

1. Davenport contends that the evidence was insufficient to sustain his convictions. We highly disagree.

(a) *Incest.* OCGA § 16-6-22 (a) provides, in relevant part, that a person commits the offense of incest when he engages in sexual intercourse with a person to whom he knows he is related either by blood or by marriage, including as father and stepdaughter. The victim testified that Davenport had sexual intercourse with her on a frequent basis for over six years between October 2003 and January 2009, during

4

which time Davenport was married to the victim's mother. Although Davenport contends that the victim's testimony was insufficient because it was uncorroborated, the testimony of a single witness is generally sufficient to establish a fact. See OCGA § 24-4-8. In any event, the victim's cousin testified that she was in the same room during one incident when Davenport and the victim had sexual intercourse. To the extent Davenport asserts that the victim and other witnesses were not credible, "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (Punctuation omitted.) *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009). Under these circumstances, the evidence in this case was sufficient to support the incest conviction. *Stephens v. State*, 305 Ga. App. 339, 340-341 (1) (699 SE2d 558) (2010) (victim's testimony that she had sexual intercourse with the defendant, her stepfather, was sufficient to support incest conviction); *Lewis v. State*, 275 Ga. App. 41, 42 (1) (619 SE2d 699) (2005) (same).

(b) *Rape*. Davenport contends that the evidence was insufficient to sustain his conviction for rape since it relied primarily on the victim's uncorroborated testimony and failed to establish the required element of lack of consent.

"A person commits the offense of rape when he has carnal knowledge of ... [a] female forcibly and against her will." OCGA § 16-6-1 (a) (1).

5

> It is well settled . . . that a victim's testimony, without more, is sufficient to sustain a conviction for rape. . . . *[I]n order to prove the rape of a child, only minimal evidence of force is required.* Proof of physical violence, intimidation or threats may be used to prove force. And lack of resistance, induced by fear, is force, and may be shown by the victim's state of mind from her prior experience with the defendant and subjective apprehension of danger from him.

(Citations and punctuation omitted; emphasis supplied.) *Siharath v. State*, 246 Ga. App. 736, 739 (2) (541 SE2d 71) (2000). Additionally, "force may be inferred by evidence of intimidation arising from the familial relationship, and may be proved by direct or circumstantial evidence." (Punctuation and footnote omitted.) *Williams v. State*, 284 Ga. App. 255, 256-257 (1) (a), (b) (643 SE2d 749) (2007)

Here, the victim stated that Davenport refused to stop when she told him that she did not want to have sex with him. Davenport repeatedly had sexual intercourse with the victim, threatening the victim not to tell anyone. After several years, the victim finally told her mother that she had been having sex with Davenport, and Davenport retaliated by beating the victim. Despite informing her mother, the mother did nothing to stop Davenport. Although the victim later reported Davenport to her pastor, she stated that she was afraid of reporting him to the police because she thought her family would disown her. This evidence was sufficient to establish the element of force, because "[w]hen a victim was repeatedly . . . raped over a period of

6

years despite [her] protests . . . and her earlier outcry was unsuccessful, 'the jury was authorized to find that, from the victim's perspective, resistance in [a] subsequent incident would have been futile." (Citation and punctuation omitted.) *Williams v. State*, 304 Ga. App. 592, 593 (1) (696 SE2d 512) (2010); *House v. State*, 236 Ga. App. 405, 409 (1) (512 SE2d 287) (1999) (evidence was sufficient to establish force where the father repeatedly sexually assaulted a child, the child's outcries to her mother were ignored, and the father warned the child not to tell anyone about his abuse).

Notwithstanding Davenport's claims that the victim consented by "accepting" money for sex, the victim stated that she never wanted to have sex with Davenport, she was relieved to have been removed from the home, and she tried to keep Davenport out of her room by locking the door when she was forced to return to the home. This evidence hardly demonstrates her consent. Consequently, the foregoing evidence was sufficient to show both force and lack of consent.

(c) *Solicitation of Sodomy*. Davenport also challenges the sufficiency of the evidence to sustain his conviction for solicitation of sodomy.

"A person commits the offense of solicitation of sodomy when he solicits another to perform or submit to an act of sodomy." OCGA § 16-6-15 (a). "Sodomy"

is defined as "any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a).

Here, the victim testified that in March 2008, Davenport offered to give her money for oral sex. Her testimony was sufficient to sustain Davenport's conviction for solicitation of sodomy. See *Carolina v. State*, 276 Ga. App. 298, 302 (1) (b) (623 SE2d 151) (2005) (victim's testimony that defendant offered her money to make "him feel good" after discussing oral sex was sufficient to sustain conviction for solicitation of sodomy); see also OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.").

2. Davenport next contends that the trial court erred by failing to declare a mistrial sua sponte when the State improperly commented on his future dangerousness during closing arguments. There is no merit to his claim.

"It is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness." (Footnote omitted.) *Wyatt v. State*, 267 Ga. 860, 864 (2) (b) (485 SE2d 470) (1997). However, when as here, the defendant has not requested a mistrial,

the trial court was required to act sua sponte only if there was a manifest necessity for a mistrial. And manifest necessity requires urgent circumstances. . . . [A] trial court's decision whether to grant a mistrial based upon manifest necessity is entitled to great deference.

(Citations and punctuation omitted.) *Gonzalez v. State*, 310 Ga. App. 348, 350 (2) (714 SE2d 13) (2011).

Here, although closing arguments were not transcribed, the State concedes and the record confirms that the prosecutor improperly commented on Davenport's "future dangerousness." After sustaining Davenport's objections to the prosecutor's remarks, the trial court instructed the jury to disregard the prosecutor's statement and confirmed that the jury understood the instruction and would follow it. Thereafter, Davenport did not move for a mistrial or otherwise raise any further objection to closing argument or to the trial court's curative measures. Under these circumstances, Davenport has not shown that there was a manifest necessity for a mistrial, and thus, the trial court was not required to declare one sua sponte. See *Wilkes v. State*, 221 Ga. App. 390, 394 (5) (471 SE2d 332) (1996) (trial court did not err in failing to grant a mistrial sua sponte after sustaining an objection to "future dangerousness" argument and giving curative instructions); cf. *Wyatt*, supra, 267 Ga. at 864 (2) (b) (trial court

9

did not err in refusing to grant mistrial based on two improper comments on defendant's future dangerousness).

3. Davenport argues that he received ineffective assistance of counsel.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [See] *Strickland v. Washington*, 466 U. S. 668, 687 [104 SC 2052, 80 LE2d 674] (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citations and punctuation omitted.) *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010). Applying these standards, we turn to review Davenport's claims.

(a) Davenport first asserts that his trial counsel was ineffective for failing to present an alibi defense through evidence that the victim was in another state during some of the dates alleged in the indictment. There is no merit to Davenport's claim.

10

Here, trial counsel testified at the motion for new trial hearing that he had a "vague recollection of there being something about [the victim] visiting Tennessee[,] but it's not coming fully to my mind in terms of how it applied to any item in the indictment." However, trial counsel did not investigate the veracity of these claims. Moreover, Davenport did not call any witness or present any evidence to show that the victim was actually in Tennessee during dates relevant to the charged offenses. Consequently, Davenport offered nothing more than mere speculation that the victim was not in Georgia during the dates listed in the indictment, and therefore, failed to show a reasonable probability that the results of the proceeding would have been different. See *Powell v. State*, 276 Ga. 592, 595 (2) (581 SE2d 13) (2003) (defendant failed to show that counsel was ineffective for failing to introduce evidence of defendant's abuse where there was no evidence to support defendant's bare assertion); *Herrington v. State*, 285 Ga. App. 4, 4-5 (a) (645 SE2d 29) (2007) (since defendant neither called purported alibi witness to testify at motion for new trial hearing nor presented legally acceptable substitute for alibi's testimony to substantiate claim that alibi evidence would have been favorable to his defense, it was impossible for defendant to show that trial counsel was ineffective for failing to present alibi defense).

11

(b) Davenport also asserts that trial counsel failed to adequately present an alibi defense showing that he was incarcerated during some of the time listed in the indictment. Again, we discern no error.

Here, trial counsel testified at the motion for new trial hearing that Davenport informed him that he was incarcerated for several days during one of the time periods when Davenport sexually abused the victim. Trial counsel further stated that, since Davenport's incarceration was only for a few days, the State would still be able to prove Davenport committed the offenses within the applicable statutes of limitations. Moreover, trial counsel stated that he did not confirm Davenport's period of incarceration, and neither he nor Davenport presented any evidence substantiating the dates Davenport was incarcerated, making it impossible to determine whether any of these dates provided an alibi defense. Absent evidence supporting his alibi defense, Davenport did not meet his burden of showing a reasonable probability that the evidence would have affected the outcome of his trial. See *Jones v. State*, ___ Ga. App. __, *5 (3) (Case No. A12A0574, decided Apr. 6, 2012) (without affirmative evidence supporting alibi defense and that trial counsel's decision not to introduce it was negligent, rather than strategic, it is impossible for the defendant to establish prejudice); *Herrington*, supra, 285 Ga. App. at 4-5 (a) (since defendant failed to

12

present evidence substantiating claim that alibi evidence would have been favorable to his defense, it was impossible for defendant to show that trial counsel was ineffective for failing to present alibi defense).

(c) Davenport also contends that trial counsel was ineffective for failing to object to the prosecutor's use of the word "predator" during closing arguments. Contrary to Davenport's claims, however, there is no evidence that the prosecutor made such remarks. As previously stated, the closing arguments were not transcribed, the prosecutor denied ever having used the word "predator," and the only improper comment that trial counsel could recall was the prosecutor's reference to Davenport's "future dangerousness." Consequently, "we hold that evidence supported the trial court's determination that no improper ['predator'] comments were made during the State's closing argument, and that [Davenport] has failed to carry his burden of showing deficient performance by his trial counsel." (Citation and punctuation omitted.) *Marshall v. State*, 265 Ga. App. 556, 558 (4) (c) (594 SE2d 661) (2004).

4. In his last enumeration of error, Davenport contends that the trial court erred in quashing his subpoena for the production of the prosecutor's handwritten notes and visual aids relating to closing argument. We discern no error.

13

> The defense must make a prima facie showing that the requested materials are relevant to his defense and that he has a right to the materials, and the trial court may properly quash an unreasonable and oppressive subpoena. Furthermore, the defendant must show that there is a reasonable probability that, had the requested materials been provided to him, the outcome of the trial would have been different.

(Citations and punctuation omitted.) *Tuttle v. State*, 232 Ga. App. 530, 531-532 (2) (502 SE2d 355) (1998).

At the motion for new trial hearing, Davenport explained that he needed the prosecutor's notes to question the prosecutor about his closing argument. The trial court found that the notes were not relevant for this purpose because there was no evidence that the notes were read verbatim to the jury. Pretermitting whether Davenport had a right to the prosecutor's notes, Davenport failed to show that the notes were relevant and material in light of the fact that he was able to examine the prosecutor at the motion for new trial hearing. Given the trial court's wide discretion in determining what evidence is relevant and material, Davenport has failed to show that the trial court abused its discretion in refusing to enforce the subpoena. See *Smith v. State*, 290 Ga. 428, 432-433 (6) (721 SE2d 892) (2012); *Taylor v. State*, 172 Ga. App. 827, 827 (1) (324 SE2d 788) (1984).

*Judgment affirmed. Mikell, P. J., and Blackwell, J., concur.*

14