**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT. ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**January 5, 2022**

# In the Court of Appeals of Georgia

A21A1482. McNEAL v. THE STATE.

HODGES, Judge.

Telly Dwight McNeal was convicted of incest (OCGA § 16-6-22) and sexual battery (OCGA § 16-6-22.1 (b)).[1] He now appeals from the judgment of conviction and the denial of his amended motion for new trial, asserting that (1) the evidence was insufficient to convict him; (2) the trial court erred in denying his motion for mistrial; (3) the trial court violated its duty under OCGA § 17-8-75 when the State's counsel made improper comments during closing arguments; (4) his trial counsel provided ineffective assistance in several respects; and (5) the combination of errors constitutes prejudice necessitating a retrial. For the reasons that follow, we affirm.

---

[1] McNeal was acquitted of rape.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. . . . [W]e do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. The jury's verdict will be upheld, then, so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

(Citations and punctuation omitted.) *Smith v. State*, 354 Ga. App. 882, 884 (1) (842 SE2d 305) (2020).

So viewed, the evidence shows that the victim, who was then about 20 years old, had a "falling out" with her grandmother, with whom she lived, shortly after midnight. Lacking a job and having nowhere else to go with her very young children, who were four months old and two years old at the time, she called a neighbor for a ride to her father's house. She spent the night at McNeal's house on an airbed, and the next day, he asked to speak with her in his bedroom while her baby was asleep and her toddler was watching television. McNeal checked to make sure that his stepson, who was also in the house, "wasn't looking," then shut and locked the bedroom door.

The victim testified that McNeal began "rubbing on my thigh. He was just saying how he was going to take care of me and make sure that I didn't need anything. He was . . . saying I reminded him of my mom . . .." The victim told McNeal to stop, but he did not, instead telling her that no one would find out. He then lay on top of her and told her that she "could . . . take care of him and he'd take care of me." She told him no, but he pulled down her pants and touched her breasts. Then he penetrated her vagina with his penis. She tried to push him off, but she weighed only 98 pounds at the time and could not. She thought about screaming but did not, because she had nowhere else to live and, "I was desperate[.]" McNeal then told her to "catch" his ejaculate in her mouth. She did, and holding it in her mouth, she left the room, knocked on the door of McNeal's stepson's room, and wrote a note on a piece of paper asking the stepson to call someone. He did so, but the person was at work. The stepson testified that the victim "acted like she had something in her mouth." The victim went into the bathroom and spat the ejaculate into a green pitcher that was on the counter.

The victim then walked to a nearby store and called the police. Later, at the hospital, she submitted to a sexual assault kit and buccal swabs. The swabs showed DNA from the victim and another individual, but "the data was too limited to be able

3

to make any full identification." A forensic biologist and a DNA examiner for the Georgia Bureau of Investigation, however, testified that the substance in the green pitcher contained semen, and the contents of the pitcher revealed the DNA of both the victim and McNeal. The odds that the DNA came from anyone other than McNeal were "one in 600 octillion."

1. McNeal argues that the evidence was insufficient to sustain his convictions. We disagree.

(a) *Incest*. McNeal contends that there was insufficient evidence that he was the victim's biological father because the State failed to present DNA evidence showing any biological relationship, and his name is not on the victim's birth certificate. We find the evidence sufficient.

OCGA § 16-6-22 (a) provides that "[a] person commits the offense of incest when such person engages in sexual intercourse or sodomy . . . with a person whom he or she knows he or she is related to either by blood or by marriage as follows: (1) Father and child or stepchild[.]" The indictment charged McNeal with "unlawfully engag[ing] in sexual intercourse with [his] daughter, knowing that he is related to said daughter by blood[.]"

McNeal's assertions challenge the victim's credibility as a witness and the proper weight to afford her testimony, but this Court "does not reweigh evidence or resolve conflicts in testimony[.]" (Citation and punctuation omitted.) *Cox v. State*, 306 Ga. 736 (1) (832 SE2d 354) (2019). It is well settled that "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8; see *Stephens v. State*, 305 Ga. App. 339, 340-341 (1) (699 SE2d 558) (2010) (finding evidence sufficient to sustain incest conviction where a single witness, the victim, testified that the defendant had sexual intercourse with her while married to her mother). "[C]orroboration of the victim's testimony is not necessary to support a conviction for incest . . .." *Raymond v. State*, 232 Ga. App. 228, 229 (1) (501 SE2d 568) (1998).

In the instant case, the victim testified that McNeal was her biological father. In a recorded interview with law enforcement, McNeal referred to the victim as "my daughter," called her children his "grandkids," and said that she called him "Daddy." "This evidence was . . . sufficient evidence from which the jury could conclude that [McNeal] and the victim were related by blood and that [McNeal] knew of his blood relationship to the victim at the time of the crime, as is required to support [McNeal's] conviction for incest." *King v. State*, 344 Ga. App. 244, 246 (1) (809 SE2d 824)

5

(2018) (upholding incest conviction where defendant referred to victim as his niece and acknowledged blood relationship in interview with law enforcement).

To the extent that McNeal attempts to raise an inconsistent verdict contention by arguing that, because he was acquitted of rape involving sexual intercourse, the jury also should have acquitted him of the charge of incest involving sexual intercourse, this argument lacks merit. Pretermitting whether this would have amounted to an inconsistent verdict, see generally *Hines v. State*, 254 Ga. 386, 387 (2) (329 SE2d 479) (1985), the inconsistent verdict rule has long been abolished in Georgia. See *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986). The evidence was sufficient.

(b) *Sexual Battery*. McNeal appears to raise another inconsistent verdict argument, contending that a reasonable jury that acquitted him of rape could not convict him of sexual battery. For the reasons outlined in Division 1 (a), this argument lacks merit.

OCGA § 16-6-22.1 (b) provides that "[a] person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person." The indictment charged McNeal with intentionally making physical contact with intimate parts of the

victim's body without her consent by "placing the hands of the accused on the breasts" of the victim.

The victim testified that McNeal "started touching on my breasts and stuff[,]" and that she tried to resist him and "kept telling him no." See generally *McWilliams v. State*, 304 Ga. 502, 505 (2) (b), (c) (820 SE2d 33) (2018) (affirming aggravated sexual battery conviction where victim told defendant "no" and that she "did not like it"). The evidence was sufficient.

2. McNeal contends that the trial court erred in denying his motion for a mistrial. We disagree.

McNeal moved for a mistrial on the second day of trial, arguing that the *prior day*, the victim's testimony had been "prejudicial" because she "had got up from the witness stand several times, trying to leave the courtroom. She had cursed several times." Counsel refused to answer the trial court's requests for more specific information and context surrounding the victim's behavior, and the trial court denied the motion, chastising counsel for his part in eliciting the behavior of which he complained.

As indicated above, McNeal did not make a contemporaneous motion for mistrial.

7

A motion for mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion. If the defendant did not make a contemporaneous motion for a mistrial at the time the defendant became aware of the matter giving rise to the motion, then the defendant has waived review of this issue on appeal. . . . Because [McNeal's] motion for mistrial was not made contemporaneous with the testimony that he complained about, the issue of whether the court abused its discretion in denying his later motion for mistrial is not properly before this Court for review. This enumeration of error therefore fails.

(Citations and punctuation omitted.) *Thomas v. State*, 310 Ga. 579, 581-582 (2) (853 SE2d 111) (2020); accord *Coley v. State*, 305 Ga. 658, 662 (3) (827 SE2d 241) (2019) (finding defendant waived appellate review of mistrial motion where he did not move for mistrial until after witness's testimony was complete, another witness had testified, and recess was taken for lunch); see also *Adkins v. State*, 301 Ga. 153, 156 (2) (800 SE2d 341) (2017) (a "defendant's invited error is neither plain nor reversible error") (citation and punctuation omitted).

3. In a two-part enumeration, McNeal argues that the trial court erred under OCGA § 17-8-75[2] when it failed to take "remedial measures" and when it overruled his objection to a portion of the State's closing argument. We disagree.

The State argued, in closing that, "offenders carefully select their victims. They want people that nobody's going to believe. They pick people that are vulnerable, especially vulnerable adults like [the victim in the instant case], and children. They select them. They're vulnerable. You can groom them." Trial counsel objected on the basis that this information was not in evidence, and the trial court overruled the objection.

(a) McNeal argues that the trial court erred in overruling his objection. We disagree.

"A trial court is vested with broad discretion in passing upon objections to alleged improper argument or questioning[.]" *Woodham v. State*, 263 Ga. 580 (1) (a)

---

[2] OCGA § 17-8-75 provides that, "[w]here counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender." We note that McNeal asserts error only as to the trial court's overruling of his objection, and makes no argument on appeal regarding the trial court's exercise of its discretion, so we do not address that issue.

9

(439 SE2d 471) (1993). "Although it is improper for an attorney during closing arguments to introduce facts that are not in evidence, counsel may draw reasonable inferences or deductions from the evidence." *Messick v. State*, 276 Ga. 528, 529 (2) (580 SE2d 213) (2003) (finding no error where there was evidence of a bloody footprint, and the State's argument made a "reasonable inference from the evidence" that the footprint belonged to the defendant).

Here, evidence supported the State's deductions, in its argument, that the victim was vulnerable. The victim testified that she contacted her father in the middle of the night seeking a place to stay because she had a "falling out" with her grandmother, with whom she had been living. The victim and her young children, who were two years old and four months old at time, had no other place to stay. There also was some evidence to support the State's deduction that McNeal had groomed her. The victim testified that McNeal did not approach her sexually until the day after she had arrived. He got her alone and offered to take care of her if she would take care of him, telling her he would "make sure I didn't need anything" and that she "reminded him" of her mother. See generally *Cannon v. State*, 296 Ga. App. 687, 688 (2) (675 SE2d 560) (2009) (finding, in similar transaction context, that evidence of

10

"grooming" included defendant giving gifts and money to victim). The trial court did not abuse its discretion.

(b) McNeal also argues that the trial court erred in not taking corrective action in response to his objection to the State's argument. We disagree.

"If a mere objection is overruled and defense counsel makes no further request for any curative action, the only authorized argument on appeal would be that the failure to sustain the objection was erroneous. In no case will the trial judge's ruling be reversed for not going further than requested." (Citation, punctuation, and emphasis omitted.) *Hall v. State*, 180 Ga. App. 881, 883 (3) (350 SE2d 801) (1986). McNeal made no request for curative action. The "failure to give an unrequested curative instruction does not create reversible error. Accordingly, we can consider this [portion of the] enumeration only under the plain error rule." (Citation and punctuation omitted.) *Crapps v. State*, 329 Ga. App. 820, 825 (2) (766 SE2d 178) (2014). See *State v. Kelly*, 290 Ga. 29 (2) (a) (718 SE2d 232) (2011) (defining the elements of plain error). However, because the trial court did not err, as outlined in Division 1 (a), there is no plain error. See generally *Russell v. State*, 303 Ga. 478, 481 (2) (813 SE2d 380) (2018).

4. McNeal argues that he received ineffective assistance from his trial counsel in several respects. We disagree.

To prevail on his claims, McNeal must show that his trial counsel's performance was professionally deficient and prejudiced his defense. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). We need not address both parts of the *Strickland* test if Appellant makes an insufficient showing on one. See id. at 697 (IV).

> This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and Appellant bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

(Citation and punctuation omitted.) *Velasco v. State*, 306 Ga. 888, 892 (3) (834 SE2d 21) (2019). To show prejudice, Appellant must demonstrate that there is a reasonable probability that, but for trial counsel's deficiency, the result of the trial would have been different. See *Strickland*, 466 U. S. at 694 (III) (B). "The likelihood of a different result must be substantial, not just conceivable. . . . [W]e accept the trial

12

court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

(a) McNeal argues that his counsel rendered ineffective assistance because he violated a court order, which McNeal contends no reasonable counsel would do.

Prior to opening statements and outside the presence of the jury, the trial court heard a motion in limine in which McNeal's counsel sought to introduce evidence potentially barred under the Rape Shield Statute (OCGA § 24-4-412). Specifically, counsel sought to introduce evidence of what he termed a "prior false accusation by the alleged victim in this case" that McNeal had molested her when she was a child. The trial court denied the motion, finding that the evidence and the State's representations about it did not support the contentions made by McNeal's trial counsel.

While cross-examining the victim, McNeal's counsel asked some explicitly phrased questions about what she had told law enforcement regarding the sexual acts that form the basis of the instant appeal. Immediately following those questions, and despite the trial court's order, counsel then asked, "Did you tell [law enforcement] that Telly [McNeal] had ever tried to sexually assault you in the past?" The State

13

objected, the victim said that she was "piss[ed] . . . off" and asked to leave, and the trial court sent the jury out. Outside the presence of the jury, the trial court chastised McNeal's counsel for disregarding its order.[3]

On appeal, McNeal contends that it can never be reasonable for trial counsel to violate a court order, and in his brief, cites extensively to colloquies in the transcript that took place outside the presence of the jury. Professional deficiency, however, is only part of the *Strickland* equation assessing whether counsel rendered ineffective assistance. McNeal is required to show both that counsel was professionally deficient, and that absent that unprofessional conduct, a reasonable probability exists that the outcome of trial would have been different. "The likelihood of a different result must be substantial, not just conceivable." *Hill*, 291 Ga. at 164 (4).

On motion for new trial, McNeal's trial attorney testified that he asked the question hoping to cast doubt on the victim's credibility, as McNeal had been in jail during the portion of the victim's childhood when she allegedly said he molested her. See *Edwards v. State*, 299 Ga. 20, 24 (2) (785 SE2d 869) (2016) ("[D]ecisions about

---

[3] Also outside the presence of the jury, the trial court found McNeal's trial counsel in summary contempt.

14

what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel. In particular, whether to impeach prosecution witnesses and how to do so are tactical decisions.") (citation and punctuation omitted.). Further, counsel's question elicited no evidence, as the victim did not answer, and the trial court specifically instructed the jury that the statements of counsel are not evidence. While the jury certainly heard the question, because the jury was sent out, it did not hear the inflammatory colloquies to which McNeal cites on appeal. There is nothing to indicate that the question, albeit in violation of the trial court's order, created a substantial likelihood of a different result at trial; thus, McNeal has not met both prongs of the *Strickland* test. See generally *Maurer v. State*, 320 Ga. App. 585, 593 (6) (e) (740 SE2d 318) (2013) (finding no ineffective assistance where counsel asked victim's mother a question that conceivably implied defendant's guilt, specifically, "[W]hy do you believe [defendant] wouldn't do this again?" where counsel's stated strategic goal was to elicit testimony favorable to defendant).

(b) McNeal contends that his trial counsel rendered ineffective assistance in eliciting evidence of his prior bad acts. Specifically, McNeal contends that his attorney elicited testimony that he had previously served time in prison and had

15

committed statutory rape. McNeal's contention of ineffectiveness mischaracterizes the evidence contained in the transcript. The pertinent questions posed by McNeal's trial counsel, and the victim's answers, follow:

Q: When did you first meet Telly McNeal?

A: It's not important. . . . His mama used to take me to a halfway house to see him when I was a child. . . .

Q: It was your mother who told you Telly was your father; correct?

A: My whole family told me he was my father.

Q: His name isn't on your birth certificate[?]

A: He had sex with my mom when she was underage. So, he could not sign the birth certificate. [McNeal's counsel objected, the trial court made no ruling, and questioning continued.] . . .

Q: And you met him for the first time when you were 11?

A: He used to write letters way before then. I didn't see him until he got to the halfway house. He would write letters from prison. [McNeal's counsel objected again, and the trial court overruled his objection.]

16

As is clear from the transcript, the victim's answers were not responsive to the questions asked by McNeal's trial counsel. See generally *Burden v. State*, 296 Ga. App. 441, 446-447 (4) (b) (674 SE2d 668) (2009) (finding no ineffective assistance where trial counsel did not move for a mistrial after a police officer testified, in passing and in a manner unresponsive to counsel's question, that defendant had an unspecified criminal history). Our Supreme Court has found, in the context of an ineffectiveness claim, that "it is well established that a witness' passing reference to a defendant's past criminal record—particularly when it is not responsive to the question posed—does not improperly place his character in issue." *Babbage v. State*, 296 Ga. 364, 370 (5) (d) (768 SE2d 461) (2015).

(c) McNeal avers that his counsel was ineffective because he improperly argued the law to the jury.

McNeal cites to the argument transcript in which his trial counsel first argues that, "The State is also trying to claim that they can prove there's a biological relationship between [McNeal and the victim]. I want to talk a little bit about that, because that's something they had the burden to prove." The State objected that counsel was misrepresenting the law, and the trial court instructed the jury that the court itself would instruct them on the law and would interrupt arguments if counsel

17

misstated the law. McNeal's counsel then continued, "There are two ways that they can try to prove that this father, daughter relationship could exist, either legally or through blood." The trial court interrupted saying, "Legally, that's a misstatement of law. You may move on to something else."

At the motion for new trial hearing, trial counsel testified that he "had believed as a matter of trial strategy that the State hadn't proved [the father-daughter] relationship," but because the State's objection was sustained, he "stopped focusing on that during closing argument." The trial court later charged the jury that, in pertinent part, "A person commits incest when that person engages in sexual intercourse with a known relative, either by blood or marriage, as follows[:] Father and child or stepchild[.]"

The trial court truncated counsel's arguments on the points about which McNeal complains, then correctly instructed the jury on those points of law. McNeal has likewise failed to show prejudice from counsel's legal misstatements. See generally *Clark v. State*, 307 Ga. 537, 544-545 (2) (c) (837 SE2d 265) (2019) (finding no ineffective assistance despite defense counsel's failure to object when prosecutor "plainly misstated the law" during closing argument where trial court correctly charged the jury, because even though "counsel should have objected . . . [t]he jury

18

was presumed to follow the trial court's instructions, and [defendant] has presented nothing to overcome this presumption").

Further, counsel's closing argument did cast doubt on the father-daughter relationship, as counsel argued that the "State is trying to claim that they can prove there's a biological relationship between [McNeal] and [the victim]." McNeal has thus failed to show prejudice from counsel's strategic decision to discontinue further argument about the father-daughter relationship. See *Davenport v. State*, 283 Ga. 171, 175 (5) (656 SE2d 844) (2008) (where defendant claimed counsel was ineffective in failing to argue he was justified in shooting the victim, Supreme Court found that it does not second-guess defense strategies in closing arguments, absent a "strong showing" that counsel's decision was unreasonable).

(d) McNeal argues that his counsel was ineffective because he objected, in the jury's presence, to the portion of the State's closing argument that addressed his "grooming" of the victim, thus eliciting an overruling of the objection by the trial court.

As noted in Division 3, the trial court's ruling on this point was correct. Further, at the motion for new trial hearing, counsel testified only that he objected because he thought the statement "would've negatively impacted my client's case."

It is well-settled that "decisions of when and *how to raise objections* are generally matters of trial strategy . . . [and McNeal] has failed to overcome the strong presumption that his counselor['s] actions were the result of sound trial strategy." (Emphasis supplied.) *Holmes v. State*, 271 Ga. App. 122, 124 (3) (608 SE2d 726) (2004).

For the reasons outlined above, we find that McNeal has not met his burden of showing that his trial counsel rendered ineffective assistance.

5. McNeal argues that the errors were cumulatively prejudicial, warranting a retrial. As we have found no prejudicial error, as outlined above, we likewise find no cumulative prejudice. *Sullivan v. State*, 301 Ga. 37, 42 (2) (d) (799 SE2d 163) (2017) ("[W]e evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors.") (citation and punctuation omitted.)

*Judgment affirmed. Miller, P. J., and Pipkin, J., concur*.